LOWELL WOOL BY-PRODUCTS CO. v. WAR CONTRACTS PRICE ADJUSTMENT BOARD.

No. 10802.

United States Court of Appeals District of Columbia Circuit.

Decided July 12, 1951.

Frederick Bernays Wiener, Washington, D. C., for petitioner.

Frederick N. Curley, Attorney, Department of Justice, Washington, D. C., for respondent.

Before PRETTYMAN and WASHINGTON, Circuit Judges, and LEDERLE, District Judge, sitting by designation.

PRETTYMAN, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States in a renegotiation case. Petitioner, Lowell Wool By-Products Company, had gross sales in 1943 of less than $100,000. Considered alone, therefore, it was exempt from renegotiation. Another company, Nichols & Co., Inc., had renegotiable income substantially in excess of the $500,000 requisite for renegotiation. The Tax Court held that the petitioner and Nichols & Co., Inc., were under common control within the meaning of the statute and that, therefore, the aggregate of the renegotiable profits should be considered in determining whether the requisite amount was present.

The statute provides: "This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, * * * unless * * * the aggregate of the amounts received or accrued in such fiscal year by the contractor or subcontractor and all persons * * * under common control with the contractor or subcontractor * * * do not exceed $500,000."[1]

We are met at the outset by a contention on the part of the respondent Board that this court has no jurisdiction to review the judgment of the Tax Court. This case began when the Board sent the petition-

---

1. Sec. (c) (6) of the Renegotiation Act, which Act was Sec. 403 of Title IV of an Act of Apr. 28, 1942, 56 Stat. 245, as amended, 50 U.S.C.A.Appendix § 1191 (c) (6).

er Company a notice. The notice said that an order had been entered determining that of petitioner's profits for 1943 some $15,000 represented excessive profits which should be eliminated. In due course that order became the final determination of the Board and the Company filed a petition with the Tax Court. The first errors assigned were the conclusions of the respondent Board that petitioner and Nichols & Co., Inc., were under common control and that petitioner's sales were subject to renegotiation. The facts were stipulated, and the Tax Court concluded that the petitioner and Nichols & Co., Inc., were under common control. That court, therefore, redetermined the amount of petitioner's renegotiable profits and found them to be excessive in the same amount so found by the Board.

The Supreme Court indicated in Macauley v. Waterman S. S. Corp.[2] that the Tax Court has exclusive jurisdiction in renegotiation cases to decide "what are and are not negotiable contracts" since this is an essential part "in determining the amount of a contractor's excessive profits."[3] The decision in that case rested upon failure to exhaust administrative remedies, and the Court, by one or two expressions, reserved decision upon the question of subsequent judicial review. However, the Court had held in the Nierotko case,[4] just a month before the Macauley case, that "An agency may not finally decide the limits of its statutory power. That is a judicial function." Similarly, in U. S. Electrical Motors v. Jones,[5] this court held that a ruling by the Tax Court upon its own jurisdiction is reviewable.[6]

 For purposes of the present case, and without endeavoring to ascertain the precise scope of the expressions in the opinion in the Macauley case, it is enough to say that in our opinion the determination that petitioner and Nichols & Co., Inc., were under common control was a determination of jurisdiction. It is clear that the finding of common control was requisite to the right of the Board to renegotiate any profits of this petitioner Company. The finding did not concern the amount of the excessive profits of petitioner but concerned the power of the Board over petitioner. The nature of petitioner's contracts was not involved; the power of the Board over petitioner depended upon circumstances wholly apart from renegotiable contracts. This view is supported by the ultimate conclusion of the Tax Court, which was: "We conclude and hold that Nichols and petitioner were under actual common control, within the meaning of Section 403(c)(6) of the Renegotiation Act; therefore that petitioner is subject to renegotiation." This, we think, was a determination of jurisdiction. We think that a question whether a certain contract is within those to be renegotiated is a question of coverage, but that a question whether the Board has any power whatever over a particular company, apart from the nature of its contracts, is a question of jurisdiction. It follows that the decision of the Tax Court upon the asserted common control of the petitioner and Nichols & Co., Inc., was a determination of jurisdiction and is subject to review.

 The facts, as we have said, were stipulated and are recited in detail in the findings of fact of the Tax Court. They involved two features pertinent to the present inquiry. The first is an involved family interrelationship among the members, including in-laws, of three families (the Nichols, Wellman and Hackett families) which together owned the control in four companies, Nichols & Co., Inc., Providence Wool Combing Co., Inc., Alexander Wool Combing Company, and petitioner. All four companies are in a business involving grease wool. Nichols & Co., Inc., is a "top maker", which means that it buys wool and causes it to be sorted, scoured, graded and

2. 1946, 327 U.S. 540, 66 S.Ct. 712, 90 L. Ed. 839.

3. Id. at 327 U.S. 544, 66 S.Ct. 714.

4. Social Security Board v. Nierotko, 1946, 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718.

5. 1946, 80 U.S.App.D.C. 329, 153 F.2d 134.

6. See Schwartz, Jurisdiction to Determine Jurisdiction in Federal Administrative Law, 38 Geo.L.J. 368 (1950).

carded into wool "tops", through wool combing mills, on a commission basis. All the shares of common stock of Nichols & Co., Inc., not held by the limited partners of petitioner are held by other members of the Nichols, Hackett and Wellman families or by trustees for their benefit. Providence Wool Combing Co., Inc., and the Alexander Wool Combing Company are engaged in the business of combing grease wool. Preliminary operations include scouring the wool. That scouring produces a liquor which contains wool grease. Originally the companies had treated the scouring liquor as a waste product, but in 1942 they acquired equipment with which they could extract the wool grease from this liquor. The grease thus extracted is salable. Petitioner is a limited partnership composed of five limited partners, who were members of the Nichols, Hackett and Wellman families, and two general partners, who were officers of, although not shareholders in, Providence Wool Combing Co., Inc. The general partners were given control of the operation of the business. The partnership bought from the Providence and Alexander companies the grease extracting machinery. Providence and Alexander agreed to sell to petitioner for ten years their entire production of scouring liquors and to provide for the use of petitioner suitable space in their plants for the operation of the business of extracting and refining wool grease. Petitioner agreed to pay Providence, for such scouring liquors, $50.00 a week and to pay Alexander $40.00 a week.

The proportionate ownership of the several members of the families, and of the families themselves, in the four companies were not the same. All this is described in the findings and in the opinion of the Tax Court. That court, relying upon prior cases, held that actual control and not merely legally enforceable control is the proper test under the Renegotiation Act; and that power of actual control rather than exercise of that power is the only necessary requirement. From all the facts and circumstances the Tax Court held that it was clear that the three families had a power of control over petitioner and Nichols & Co., Inc., and that the petitioner's view that there was no entity in the members of the three families was met by the manner in which they participated in the various companies. Judge Disney, writing for the court, observed: "The organization of these different companies by members of the same families, including wives, a mother and son-in-law, as stockholders, is proof of intent to control them, and may not be overlooked with any regard for realism." There was no generalization by that court concerning control by and among members of families, and certainly we intend none. The finding was upon an examination of the facts in this particular case.

The other feature of the case which supports the view of the Tax Court upon common control is the motive for the organization of petitioner. The Boston Quartermaster Price Adjustment District Office had ruled that the sales of wool grease by Providence and Alexander should be treated as a credit against costs for the purposes of renegotiating alleged excessive profits. The officers of the companies understood the ruling to mean that these profits would have to be paid over to the United States. Counsel for the companies proposed that a new company be formed for the purpose of extracting the wool grease from the scouring liquors. So petitioner was formed. As we have recited, it bought from Providence and Alexander their entire output of scouring liquors at a fixed amount per week and then sold the extracted grease. These circumstances support the view that the petitioner was under the control of the group the members of which were the owners of Providence and Alexander and also owners of Nichols & Co., Inc.

We think that the view of the Tax Court upon the intent and meaning of the term "common control" in the Renegotiation Act was correct, and there was ample evidence in the record to support its conclusion of fact as to such control in this case. The decision of the Tax Court is, therefore,

Affirmed.