**UNITED STATES et al.**

v.

**CALIFORNIA EASTERN LINE, Inc.**

No. 11448.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 13, 1953.

Decided Jan. 21, 1954.

Petition for Rehearing in Banc
Denied March 12, 1954.

Mr. Frederick N. Curley, Atty., Dept. of Justice, Washington, D. C., with whom Mr. Edward H. Hickey, Atty., Dept. of Justice, Washington, D. C., was on the brief, for petitioners.

Mr. Harold B. Finn, pro hac vice, by special leave of Court, with whom Mr. Robert E. Kline, Jr., Washington, D. C., was on the brief, for respondent.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States in a renegotiation case. California Eastern Line, Inc., respondent here, was the owner of the American steamship "Vermont". In 1941 it entered into a written contract signed by the British Ministry of War Transport as the other party. Under the contract the vessel was used to transport cargo from New York to Sudan, in the Red Sea range. Respondent company received payment for the service. In 1949 the Chairman of the Maritime Commission entered an order determining that the company had realized excessive profits under the contract and proposing to renegotiate the contract. Thereafter he determined that the company had derived $164,000 of such profits within the meaning of the Renegotiation Act.[1] The company appealed to the Tax Court of the United States, which made extensive and detailed findings of fact and rendered an exhaustive opinion. It found as a fact that "The charter of the Vermont was neither a contract with the Commission or with any other department named in the Renegotiation Act, nor a subcontract under such a contract."[2]

The Renegotiation Act[3] empowers renegotiation of "the profits realized or likely to be realized from any contract with such Department, or from any subcontract thereunder whether or not made by the contractor". The statute defines the word "Department" thus:[4]

"The term 'Department' means the War Department, the Navy Department, the Treasury Department, the Maritime Commission, Defense Plant Corporation, Metals Reserve Company, Defense Supplies Corporation, and Rubber Reserve Company, respectively."

Upon the basis of its findings of fact, as above indicated, and these provisions of the statute, the Tax Court determined: " * * * we have been unable to conclude that this contract is covered by the statute." It ordered and decided that "there is no renegotiable contract within Section 403(c) (1) of the Renegotiation Act." The present petition for review followed.[5]

The first question is whether this court has jurisdiction to review the decision of the Tax Court in this matter. The statute[6] provides that the Tax Court "shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency." This court has held several times that in renegotiation cases it can review decisions of the Tax Court in re-

1.  56 Stat. 245 (1942), as amended, 50 U.S. C.A.Appendix, § 1191.

2.  1952, 17 T.C. 1325.

3.  56 Stat. 983 (1942), as amended, 50 U.S. C.A.Appendix, § 1191(c) (1).

4.  57 Stat. 348 (1943), as amended, 50 U.S. C.A.Appendix, § 1191(a) (1).

5.  After the filing of the petition Government counsel moved to remand to the Tax Court. This motion was denied. Chairman of U. S. Maritime Comm. v. California Eastern Line, 1953, 92 U.S.App. D.C. 207, 204 F.2d 398.

6.  58 Stat. 86 (1944), 50 U.S.C.A.Appendix, § 1191(e). (1).

spect to jurisdictional and constitutional questions only.[7]

In 1945 this court had before it a renegotiation case which was strikingly similar to this one.[8] The evidence in the present case is more extensive, but the basic facts, i. e., the contract, the signatories, the performance, are identical in all material respects. The Waterman Steamship Corporation was the owner of steamships and chartered some of them by contract signed by the British Ministry of War Transport. The Maritime Commission proposed to renegotiate the profits realized by the company on those contracts. The company maintained that the contracts were with a foreign government and therefore not subject to renegotiation. The company forthwith brought a civil action in the District Court seeking an injunction or a declaratory judgment. The District Court dismissed the action, on the ground that the company had not exhausted its administrative remedies. On appeal to this court the company argued as its first point that the charters were not charters with the Commission or with any department of the United States Government and that accordingly there was no statute which authorized their renegotiation. This court held that the question thus presented was jurisdictional and that, if there was no law compelling renegotiation of the contracts, the company was entitled to invoke the Declaratory Judgment Act. The court thereupon went into an extensive examination of the question as to whether the contract was a contract with the Commission or was a contract with a foreign government and concluded by remanding the case to the District Court for consideration of that one question. The Supreme Court granted *certiorari* and in the course of its opinion wrote as follows:

"Just as in the Myers case [Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638], the claim here is that the contracts are not covered by the applicable statute. And the applicable statute, the Renegotiation Act, like the National Labor Relations Act in the Myers case, empowers administrative bodies to rule on the question of coverage. The Renegotiation Act authorizes the Chairman of the Maritime Commission to conduct investigations in the first instance to determine whether excessive profits had been made on contracts with the Commission. A contractor aggrieved by the Chairman's determination of excessive profits may have them redetermined in a 'de novo' proceeding before the Tax Court. Section 403(e) (1) of the Act provides that the Tax Court 'shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits . . .' Contrary to respondent's contention that this language limits the Tax Court's jurisdiction so as not to include the power to decide questions of coverage, we think the language shows that the Tax Court has such power. For a decision as to what are and are not negotiable contracts is an essential part in determining the amount of a contractor's excessive profits. The legislative history of the Renegotiation Act, moreover, shows that Congress intended the Tax Court to have exclusive jurisdiction to decide questions of fact and law, which latter include the issue raised here of whether the contracts in question are subject to the Act."[9]

7. E. g., U. S. Electrical Motors v. Jones, 1946, 80 U.S.App.D.C. 329, 153 F.2d 134; Psaty & Fuhrman v. Stimson, 1950, 87 U.S.App.D.C. 47, 182 F.2d 985; Lowell Wool By-Products Co. v. War C. P. A. Bd., 1951, 89 U.S.App.D.C. 281, 192 F.2d 405; Knu-Vise, Inc. v. War Contracts Price Adjustment Bd., 1951, 90 U.S.App. D.C. 218, 195 F.2d 198.

8. Waterman S. S. Corporation v. Land, 1945, 80 U.S.App.D.C. 167, 151 F.2d 292.

9. Macauley v. Waterman S. S. Corp., 1946, 327 U.S. 540, 544, 66 S.Ct. 712, 90 L.Ed. 839.

The Court went on to say: "Whether it [the District Court] ever can do so or not, it cannot now decide questions of coverage when the administrative agencies authorized to do so have not yet made their determination." The Court reversed this court upon the ground that the company had not exhausted its administrative remedies.

■■ It is argued to us that the long passage which we have quoted was *dictum*. Whether it was or was not, we think we cannot disregard it. The problem now before us is precisely the problem involved in that discussion. The Court said without qualification that what are and what are not negotiable contracts is a question of coverage and a part of the determination of the amount of excessive profits, as to which the Tax Court has exclusive jurisdiction. According to that statement, which we apply as written, this court has no jurisdiction to review the decision of the Tax Court upon the question whether the contract in controversy was or was not renegotiable. We do not understand the Supreme Court to have foreclosed review if requirements of due process were allegedly violated, but we do not have that question before us.

We discussed the Waterman case briefly in Lowell Wool By-Products Co. v. War C. P. A. Bd.[10] and, in respect to the rule as we saw it, said:

"We think that a question whether a certain contract is within those to be renegotiated is a question of coverage, but that a question whether the Board has any power whatever over a particular company, apart from the nature of its contracts, is a question of jurisdiction."

The Government argues that in a later case[11] the Supreme Court, discussing the Waterman case, said: "The Waterman Corporation had contracted directly with a government agency, the Maritime Commission." This sentence, says the Government, was a conclusive finding upon the point in dispute in the Waterman case and also in the case at bar. But we think the Supreme Court did not intend that this one sentence, in the midst of a discussion of the Waterman case for other purposes, should constitute a final and conclusive finding of fact in a case which was not then before the Court and as to which it had no record, and particularly where the Court had held that the Tax Court must make the initial finding of that precise fact.

■ It follows from the foregoing that this petition for review must be dismissed for lack of jurisdiction. If it were determined that the question of the renegotiability of this contract went to the jurisdiction of the Tax Court and thus could be reviewed by this court, we would have to review the rulings of the Tax Court upon the subsidiary questions which went to make up its ultimate conclusion that it had jurisdiction. In that event we would review those questions on the same basis as we would review the record of a District Court proceeding.[12] Those questions as to which the petitioners allege error have been argued to us. Petitioners complain of the refusal of the Tax Court to admit in evidence a document purporting to be an official statement on the part of the British government.[13] They also claim error on the part of the Tax Court in various conclusions surrounding the negotiation and execution of the contract in dispute and concerning transactions which occurred pursuant to the contract. Petitioners further say that the Tax Court erred in the inferences which it drew from the

---

10. 1951, 89 U.S.App.D.C. 281, 283, 192 F.2d 405, 407.

11. Aircraft & Diesel Corp. v. Hirsch, 1947, 331 U.S. 752, 766, 67 S.Ct. 1493, 91 L.Ed. 1796.

12. Cf. Sec. 1141(a), Int.Rev.Code, 26 U.S. C.A. § 1141(a); U. S. Electrical Motors v. Jones, 1946, 80 U.S.App.D.C. 329, 331, 153 F.2d 134, 136.

13. We note that the Tax Court does seem to have taken a look at the British statement, and Judge Raum, who wrote the opinion, observed that even upon that basis the Government did not establish its point.

clauses of the contract. We do not reach these contentions, as we lack jurisdiction of the question to which they are subsidiary.

Petition dismissed.