**UNITED STATES**

v.

**MARTIN WUNDERLICH CO., et al.**
(two cases).

Nos. 11446, 11447.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 15, 1954.

Decided March 25, 1954.

Mr. Harland F. Leathers, Attorney, Department of Justice, Washington, D. C., for petitioner.

Mr. Joseph A. Maun, St. Paul, Minn., of the bar of the Supreme Court of Minnesota, pro hac vice, by special leave of Court, with whom Mr. Harry D. Ruddiman, Washington, D. C., was on the brief, for respondents. Mr. Paul M. Rhodes, Washington, D. C., entered an appearance for respondents.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

In these renegotiation cases, the Government requests review of two decisions of the Tax Court of the United States which held non-renegotiable a contract under which the Secretary of War had theretofore determined the contractor[1] had realized large excessive profits.

The facts may be briefly stated. In December, 1940, The Panama Canal accepted Wunderlich's bid on the excavation for the new Gatun locks and appurtenant works on the Atlantic side of the Canal. The contract therefor, numbered PClp–571, became effective when it was approved February 20, 1941, by the Acting Governor of The Panama Canal. Work thereunder began almost immediately and was completed in October, 1943. In the meantime, Wunderlich undertook and completed several contracts with the War Department, including those which bore the following

---

1. Martin Wunderlich Company and Okes Construction Company, as joint venturers. We shall refer to them as "Wunderlich" or "the contractor."

numbers: W–2134–eng–1246, W–2134–eng–1472 and W–2134–eng–1478.

Substantial payments under Panama Canal contract No. 571 were made to Wunderlich during its fiscal periods ended January 31, 1942, and December 31, 1942.[2] More than three years later, on April 2, 1946, the Secretary of War unilaterally determined that during the first of the two fiscal periods mentioned Wunderlich had realized, from contracts and subcontracts subject to renegotiation, excessive profits amounting to $1,910,000; and, during the second fiscal period, excessive profits amounting to $2,960,000. He demanded repayment of those sums. The Secretary made these determinations on an overall basis, that is to say, he aggregated the profits realized by Wunderlich during each fiscal period from several government contracts, including Panama Canal contract No. 571. In fact, the entire amount of excessive profits determined for the first of the two fiscal periods arose under that contract; and of the sum of $2,960,000 determined for the second fiscal period, the sum of $2,610,659 arose under contract No. 571.

Dissatisfied with these determinations, Wunderlich applied within ninety days thereafter to the Tax Court for redetermination of the amount, if any, of its excessive profits. It contended, among other things, that the Secretary of War did not commence renegotiation proceedings as to the Panama Canal contract within the period permitted by the statute,[3] and that the contract was not renegotiable after the bar of limitation had fallen.

The Government argued to the contrary, although it did not claim the Secretary had ever begun renegotiation of Panama Canal contract No. 571 as such, by express reference thereto. It urged that a letter to Wunderlich, dated August 28, 1943, and a conference with its representatives, held December 13, 1943, constituted commencement of renegotiation of Wunderlich's profits realized from all renegotiable contracts during the two fiscal periods involved, which of course included the Panama Canal contract. Therefore, it was said, renegotiation of that contract was begun before the limitation period ended on December 31, 1944.

Wunderlich responded by contending the letter and conference did not initiate overall renegotiation on a fiscal period basis, but dealt only with the three War Department contracts to which we have referred, and so did not constitute commencement of renegotiation proceedings as to contract No. 571.

Thus there was presented to the Tax Court the question of the legal effect of the letter and conference: did they or did they not begin overall fiscal period renegotiation? If so, renegotiation of the Panama Canal contract was timelily commenced; if not, renegotiation of that contract was barred by limitation when the Secretary made his determinations of excessive profits thereunder.[4]

Trying the case *de novo* as the statute requires, the Tax Court received ev-

2. After January 31, 1942, the contractor's fiscal year was changed to end December 31, with the permission of the Commissioner of Internal Revenue.

3. As contract No. 571 was completed in October, 1943, renegotiation concerning it could not be begun after December 31, 1944, under § 403(c) (6) (iii) of the Renegotiation Act, 56 Stat. 984 (1942), 50 U.S.C.A.Appendix, § 1191, which is in part as follows:
   "No renegotiation of the contract price pursuant to any provision therefor, or otherwise, shall be commenced by the Secretary more than one year after the close of the fiscal year of the contractor or subcontractor within which completion or termination of the contract or subcontract, as determined by the Secretary, occurs."

4. The Government relied entirely upon the letter of August 28, 1943, and the conference of December 13, 1943, as the beginning of renegotiation. It did not suggest that renegotiation of contract No. 571 was otherwise commenced before limitation ran on December 31, 1944.

idence, made elaborate findings of fact, and filed a carefully prepared opinion. It found the Panama Canal contract was neither referred to in the letter nor mentioned at the conference, both of which dealt only with renegotiation of the three War Department contracts which we have heretofore described by number. From this the Court concluded as a matter of law that the letter and conference did not initiate overall fiscal period renegotiation, and therefore did not constitute commencement of proceedings to renegotiate contract No. 571. This basic holding compelled the further conclusion that the period of limitation had expired before the Secretary commenced renegotiation of the Panama Canal contract, and that it was not subject to renegotiation when his determinations of excessive profits therefrom were made April 2, 1946.

With the Panama Canal contract thus eliminated from consideration, the Tax Court proceeded to determine the amount, if any, of the contractor's excessive profits, realized during the second of the two fiscal periods, from other contracts which were undisputedly renegotiable. Its separate formal decisions were, in essential part, as follows:

(a) " * * * That there were no contracts subject to renegotiation and accordingly the petitioner [Wunderlich] realized no excessive profits for the fiscal year ended January 31, 1942."

(b) " * * * That the petitioners realized excessive profits in the amount of $349,341 for the fiscal year ended December 31, 1942."

■ These are the decisions which the Government asks us to review. The contractor challenges our right to review the rulings, relying upon the provision of the Renegotiation Act[5] that the Tax Court

" * * * shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency."

This statutory provision precludes us from reviewing the Tax Court's determination of excessive profits except as to constitutional or jurisdictional questions.[6] The Government does not challenge this well settled proposition, but insists that a question concerning the Tax Court's jurisdiction is presented. Whether so or not is the pivotal point upon which our decision turns.

The Government contends the Tax Court erred in holding the letter and conference merely initiated renegotiation of the three War Department contracts referred to by number therein, and did not constitute the commencement of overall renegotiation on a fiscal year basis, which would have included the Panama Canal contract. It is said the Tax Court erred, therefore, in holding the Secretary of War did not begin to renegotiate the Panama Canal contract within the permitted period. It is argued that these holdings amount to a ruling by the Tax Court that it lacked jurisdiction over contract No. 571. If so, we may review its decisions.

The question is, then, whether the Tax Court disclaimed jurisdiction with respect to the Panama Canal contract. It did not do so in express terms, for nowhere in its findings, opinion or decisions did the Court say or even intimate that it considered itself without jurisdiction to determine "the amount,

5. Section 403(e) (1), 58 Stat. 86 (1944).
6. United States **v.** California Eastern Line, Inc., 1954, 93 U.S.App.D.C. —, 211 F.2d 635. See also Knu-Vise, Inc. v. War Contracts Price Adjustment Board, 1952, 90 U.S.App.D.C. 218, 195 F.2d 198; Lowell Wool By-Products Co. v. War Contracts Price Adjustment Board, 1951, 89 U.S.App.D.C. 281, 192 F.2d 405; Psaty & Fuhrman v. Stimson, 1950, 87 U.S.App.D.C. 47, 182 F.2d 985; Eastern Machinery Co. v. Under Secretary of War, 1950, 86 U.S.App.D.C. 331, 182 F.2d 99; U. S. Electrical Motors v. Jones, 1946, 80 U.S.App.D.C. 329, 153 F. 2d 134.

**436**

if any," of excessive profits realized under contract No. 571. Nor can a denial of its own jurisdiction be implied from the Tax Court's holdings.

■ In finding from the evidence that renegotiation of contract No. 571 was not seasonably undertaken, that is, that the period of limitations had expired before the Secretary sought renegotiation of that contract, the Tax Court did not decide a question of its jurisdiction. Compare United States v. California Eastern Line, Inc., 1954, 93 U.S.App.D.C. ——, 211 F.2d 635. The court decided a mixed question of fact and law regarding the timeliness, and consequent limitation bar, of renegotiation of a particular contract. This was not a jurisdictional decision but one which properly falls within those incidental to the determination of the amount of excessive profits, unreviewable by any court.

■ We think it necessary, before closing this opinion, to refer to our decision in Blanchard Mach. Co. v. Reconstruction Finance Corp., Price Adjustment Board, 1949, 85 U.S.App.D.C. 361, 177 F.2d 727, 728, cited by the Government, which does indeed tend to support its position. One of the questions in that case was raised by the contractor's contention, thus stated by the court,

" * * * that renegotiation of its profits realized from business completed and paid for within its fiscal year ended November 30, 1942, was not commenced within the time allowed by the Renegotiation Act, as amended, * * *."

The Tax Court held renegotiation was seasonably begun, and the contractor petitioned us to review that holding. The Government attorneys argued the Tax Court's ruling was final and unreviewable, and so challenged our jurisdiction. We said, 85 U.S.App.D.C. at page 362, 177 F.2d at page 728:

"Since the provision of the Act relied upon ascribes finality only to the Tax Court's determination of 'the amount' of excessive profits (the issue eliminated by stipulation) and 'leaves untouched, by direct reference or otherwise, the remaining content of section 1141(a) of the Internal Revenue Code [26 U.S.C.A. § 1141(a)]', United States Electrical Motors v. Jones, 80 U.S. App.D.C. 329, 153 F.2d 134, 136, we think respondent's contention in respect to our lack of jurisdiction to review the questions here presented is untenable."

This court then proceeded to review the Tax Court's ruling that renegotiation had been begun in time. To the extent the Blanchard case may be construed as holding we have jurisdiction to review the Tax Court's decision as to timeliness in initiating renegotiation, it is no longer to be regarded as authority.

Petitions for review dismissed for lack of jurisdiction.

BAZELON, Circuit Judge, concurs in the result.