OPINION. Rice, Judge: Petitioner’s sales during each of the years here in issue were less than the jurisdictional minimum of $500,000 required by section 403 (c) (6) of the Renegotiation Act of 1943[1] before excessive profits can be renegotiated. The sole issue before us is whether petitioner was under the control of, or under common control with, the P. R. Hoffman Company, thus permitting their combined sales to be. used to bring petitioner within the provisions of the Act. The respondent’s principal contention is that petitioner and the Corporation were both under the actual control[2] of Reynold. The parties have stipulated that Reynold exercised control over the Corporation. The crux of the matter, therefore, is whether Reynold also exercised control over petitioner’s activities as well, even though only an equal partner in petitioner with respect to profits and losses.. See Lowell Wool By-Prod. Co. v. War Cont. Price Adj. Bd., 14 T. C. 1398 (1950), affd. 192 F. 2d 405 (C. A., D. C., 1951). The issue of control is one of fact, the determination of which depends upon all the facts and circumstances of record. Warner v. War Contracts Price Adjst. Board, 14 T. C. 1320 (1950). Upon the record before us, we have found as a fact that petitioner and the Corporation were under common control. Although both appear to have been operated as separate and distinct business - entities and the evidence does not- indicate that Reynold used his control to intermingle or integrate their activities, nevertheless, the evidence does establish that he controlled the activities of the petitioner as well as those of the Corporation. Under the partnership agreement which governed petitioner’s activities during the years here in issue, Reynold and Bertha shared equally in petitioner’s profits and losses. However, the agreement had specific provisions as to the responsibility - for. the management of the business, placing all such authority in the hands of Reynold. Furthermore, in the fictitious name certificate which the partnership was required to file, Bertha certified that Reynold was the agent through whom the business of the petitioner was to be carried on. The provisions in these documents cannot be lightly disregarded despite the self-serving testimony of Bertha and Reynold that they were not followed in the actual operation of the business. We are convinced that, although Bertha may have exercised supervisory authority over petitioner’s routine activities, the ultimate authority was in Reynold, pursuant to the provisions of their partnership agreement. Testimony of three individuals who were employed by petitioner during the years in issue, although meager, is significant. Two men who were employed in the production department stated that they looked to Bertha for decisions on office matters, and to Reynold for decisions on technical and production problems. The testimony of a third employee, the comptroller, is even more important. His work was in a sphere in which Bertha claimed complete authority. Despite this, he stated that, in the event of a conflict between Bertha and Reynold, he looked to Reynold for the ultimate decision. Undoubtedly, relations between Bertha and Reynold were harmonious and conflicts were few, if any. Also, petitioner’s business seems to have reached a stage, during these years, when its routine activities could be managed by Bertha with a minimal demand upon Reynold’s time and supervision. But the statute refers to “control” and not to management or the division of profits. On the basis of the partnership agreement’s provision for control and the record as a whole, we hold that petitioner and the Corporation were under common control during the years 1944 and 1945 within the meaning of section 403 (c) (6). Petitioner argues that, in addition to common control, we must find that the two business entities in issue were created with an intent to avoid profit renegotiation. However, section 403 (c) (6) does not speak in terms of intent. When common control exists, then the profits of all business entities under such control may be renegotiated so long as the aggregate of their sales is $500,000 or more. There is no mandate in the Act requiring us to determine why the separate business entities were organized or why contracts were allocated by those in control to one business or the other. Nor is the fact that the business entities engage in different types of business important. Moening v. War Contracts Price Adjustment Board, 14 T. C. 589 (1950). The percentage of proprietorship interest in the various business entities may vary, but so long as actual control over each exists, then the common control test has been met. An order will be entered in accordance herewith. The pertinent provisions of section 403 (c) (6) ,are as follows : This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, * * * unless * * * (B) the aggregate of the amounts received or accrued in such fiscal year by the contractor or subcontractor and all persons irader the control of or controlling or under common control with the -contractor or subcontractor, under contracts with the Departments and subcontracts.!* * *) do not exceed $500,000 * * *. If such fiscal year is a fractional part of twelve months, the $500,000'amount ' * * ' * shall be reduced to the same fractional part thereof for-the purposes of this paragraph. The Regulations as set out in the Renegotiation Manuals for fiscal years ending after June 30, 1943, define “control” as follows: 348.4 Tests of “Control”. In determining whether the contractor controls or is controlled by or under common control with another person, the following principles should be followed : [[Image here]] (5) Other eases: Actual control is :a question of fact. Whenever it is believed that actual control exists even though the foregoing conditions are not fulfilled, the matter may be determined by the' Department or .Service conducting the renegotiation.