**HANLON–WATERS, Inc., Petitioner,**
**v.**
**UNITED STATES, Respondent.**
**No. 11934.**

United States Court of Appeals
District of Columbia Circuit.
Argued May 12, 1954.
Decided April 14, 1955.

---

Mr. Alexander M. Heron, Washington, D. C., for petitioner.

Mr. Frederick N. Curley, Attorney, Dept. of Justice, for respondent.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

This is a renegotiation case. Petitioner appeals from a judgment of the Tax Court, Hanlon-Waters, Inc., v. United States, 20 T.C. 537, holding that it had realized excessive profits for the year ended December 31, 1943, of which a balance of $804,523.20 remained due to the United States. We delayed decision because of the pendency of United States v. California Eastern Line, Inc., 348 U.S. 351, 75 S.Ct. 419, 421, involving our jurisdiction in such cases. The Supreme Court there held that a decision of the Tax Court that a particular contract is not renegotiable is within our jurisdiction "to review the decisions of the Tax Court," granted by § 1141(a) of the Internal Revenue Code,[1] and, therefore, is not within the exclusive, unreviewable jurisdiction of the Tax Court "to finally determine the amount, if any" of excessive profits in renegotiation cases.[2] See Lichter v. United States, 95 U.S.App.D.C. ——, 221 F.2d 869.

The validity of the Tax Court order[3] in this case turns upon whether an agreement entered into by the United States with petitioner was a final settlement of excessive profits for 1943 from three specified contracts, subject only to being reopened under certain conditions, set forth in the agreement, in the discretion of the United States officials. If it was such a final settlement then the United States and the Tax Court were bound by it.[4] The Tax Court, however, construed the agreement as not restricting the United States to such reopening provisions and approved the redetermination by the renegotiating officials of an amount in excess of that fixed by the agreement. We think this is a decision within our jurisdictional ambit in renegotiation cases as outlined by the Supreme Court in United States v. California Eastern Line, Inc., supra.

Coming to the merits, the parties carried on rather extensive negotiations over petitioner's excessive profits from

1. 53 Stat. 164, as amended, 26 U.S.C. § 1141(a). See, also, § 7482 of the Internal Revenue Code of 1954 (68A Stat. 890).

2. § 403(e) (1) of the Renegotiation Act, 56 Stat. 245, as amended, 58 Stat. 86, 50 U.S.C.A.Appendix, § 1191(e) (1).

3. The amount of excessive profits, and the amount of the unpaid balance, are not in controversy in this court.

4. § 403(c) (4) of the Renegotiation Act of 1942, 56 Stat. 984, provides:
"* * * (i) such agreement shall not be reopened as to the matters agreed upon, and shall not be modified by any officer, employee, or agent of the United States; and (ii) such agreement and any determination made in accordance therewith shall not be annulled, modified, set aside, or disregarded in any suit, action, or proceeding. * * *"

the three specified contracts [5] for 1942, 1943, and possibly subsequent years. They then executed the agreement referred to, dated July 16, 1943. Its finality as an agreement on excessive profits from the contracts for the year ending December 31, 1942, is not in dispute. The question is as to its bearing on the redetermination of excessive profits for the year 1943.

Paragraph III of the agreement requires petitioner to refund or credit to the United States for 1943 an amount equal to 22½% of the actual net sales of all units which as of July 16, 1943, were included in the contracts. Paragraph III then provides:

"The contractor represents that in its opinion such reductions are calculated to eliminate from the contracts enumerated above, profits found herein to have been realized, or likely to be realized, which should be eliminated pursuant to the provisions of the Act. The provisions of this paragraph, however, shall be without prejudice to subsequent renegotiation pursuant to the Act, relating to any fiscal year subsequent to the fiscal year ending December 31, 1942."

Standing alone, the last sentence of Paragraph III would substantiate the decision below that the agreement did not preclude statutory renegotiation for 1943, notwithstanding the agreed refund or credit reduction. But the parties did not leave the matter in this situation. In Paragraph VI they provided that the finding made in the agreement, including the 22½% reduction, should be a final and conclusive determination of the profits under the three contracts for the fiscal year 1942, and moreover that it should be deemed,

"* * * a final and conclusive determination of the profits of the contractor * * * under contracts

and purchase orders to the extent as set forth in Paragraph III hereof *for the fiscal year 1943,* which should be eliminated pursuant to the Act, subject to the right of the Under Secretary of War or his duly authorized representative, (a) to reopen the renegotiation in his discretion at any time within sixty (60) days after the contractor shall have filed with the Under Secretary of War a statement of financial statements provided for in Paragraph V herein, if the actual figures with respect to such factors as cost, volume of production and nature of products prove to be materially at variance with the estimates on which the finding herein was based, and (b) to reopen the renegotiation in his discretion at any time hereafter upon a showing of fraud or malfeasance or a wilful misrepresentation of a material fact. * * *" (Emphasis supplied.)

Paragraph VI then concludes,

"* * * Subject to the foregoing, performance by the contractor of this agreement shall be in full release and discharge of all liability of the contractor under the Act to refund or repay to the Government any amount of profits realized by said contractor under said contracts."

Paragraphs III and VI cannot be interpreted in isolation one from the other. The provision in the former that the 22½% reduction is without prejudice to subsequent renegotiation pursuant to the Act for years subsequent to 1942 cannot be given the effect ascribed to it by the Tax Court consistently with the provisions of Paragraph VI that this "finding", or reduction, under contracts and purchase orders "to the extent as set forth in Paragraph III", is final and conclusive for 1943 also, of those profits which should be "eliminated pursuant to

---

5. The contracts are designated as follows: Contract No. W-1465-eng-268 (Purchase Order No. M-1558)

Contract No. W-781-eng-1185 (Purchase Order No. DL-1004-OT-112)
Contract No. W-781-eng-1189 (Purchase Order No. DL-1009)

the Act"—subject only to being reopened under the provisions of Paragraph VI. That paragraph authorizes the Under Secretary to reopen in his discretion the renegotiation as to 1943 if the figures subsequently filed by petitioner under Paragraph V [6] proved to be materially at variance with the estimates on the basis of which the 22½% reduction for that year was agreed to, or upon a showing of fraud, malfeasance or wilful misrepresentation of a material fact.[7] It concludes with an undertaking that subject to its preceding provisions, which include those for reopening within a specified time on the basis of additional information, performance of the agreement constitutes a full release and discharge of petitioner from any liability for profits realized from the three contracts.

■■ The United States relies upon the language of Paragraph VI that the finding of Paragraph III should be conclusive as to 1943 only "to the extent as set forth in Paragraph III". It says in substance that this is not intended as limiting the conclusiveness of Paragraph III, insofar as 1943 is concerned, to renegotiation of the actual net sales of all units which as of July 16, 1943, are included in the three contracts, but that, in addition, it is intended to bind only the petitioner, not the United States, to the reduction of 22½% even though the United States does not reopen renegotiations within the terms of Paragraph VI. It supports this view by urging further that the 22½% reduction was not a renegotiation of excessive profits but a repricing arrangement. As to this, we think the Act does not exclude such repricing as a method of renegotiation. An arrangement for refund or credit may be made the basis of a final and

binding agreement on excessive profits. For § 403(c) (4) of the Renegotiation Act of 1942 provides that agreements, binding under the Act,

"* * * may cover such past and future period or periods, may apply to such contract or contracts of the contractor or subcontractor, and may contain such terms and conditions, as the Secretary deems advisable. * * *" 56 Stat. 984.

■ If we read Paragraph III with Paragraph VI as authorizing unconditional and full renegotiation of the profits from the three contracts for 1943, over and above the 22½% reduction, then we must read out of the agreement that part of Paragraph VI which provides for renegotiation for 1943 only in the discretion of the Under Secretary after the filing of information under Paragraph V, see n. 6, supra; and we must read out also the clause in Paragraph VI providing for finality in the absence of reopening in this manner. The Tax Court in its opinion agrees that its interpretation gives no effect to these reopening provisions of Paragraph VI, which it says serve no useful purpose, 20 T.C. at pages 549–550, but the court seeks to give effect to the finality provision of Paragraph VI by applying it to the 22½% reduction set forth in Paragraph III, though not to "any excessive profits which the 22½% refund or credit did not eliminate." 20 T.C. at page 549. But the finality clause, in relation to the 22½% reduction, we think is not to be read as so one-sided. No finality clause was necessary in Paragraph VI to make the 22½% reduction binding upon petitioner. Petitioner had agreed to it by Paragraph III. The clause would be meaningless if the United States could reopen negotiations without

---

6. The Tax Court found that Paragraph V "provided that the petitioner would furnish to the Under Secretary of War a written statement showing the actual results of its operations for the fiscal year 1943 under the certification of independent public accountants within a reasonable time after the end of that fiscal year."

Hanlon-Waters, Inc. v. United States, 20 T.C. 537, 541.

7. This last mentioned basis for reopening is in the statute as well as in the agreement. See § 403(c) (4) of the Renegotiation Act of 1942, 56 Stat. 984.

regard to the conditions set forth in Paragraph VI. We do not feel at liberty to disregard so much of the agreement.

We think a fair reading of the agreement leads to the conclusion that the United States agreed that the "repricing" would be accepted as a final renegotiation of excessive profits for 1943 insofar as the specified three contracts and purchase orders were concerned, unless the United States exercised its discretion to reopen under the conditions of Paragraph VI. In the event of such reopening Paragraph III means that the subsequent renegotiation would not be prejudiced by the fact that a 22½% reduction had previously been agreed to for 1943. More important, the last sentence of Paragraph III is given the effect of freeing from any conditions renegotiation of excessive profits from the three contracts for years subsequent to 1943, or of excessive profits for any year, including 1943, on contracts or purchase orders not specified in the agreement. This interpretation of Paragraph III gives it application and meaning consistent with the provisions of the agreement as a whole.[8]

Since the Tax Court found that the profits for 1943 were renegotiable under Paragraph III, without regard to Paragraph VI, it did not decide whether the Under Secretary of War or his representative had exercised his discretion to reopen under Paragraph VI, as the United States contends was done, or whether the negotiators for the Government were without authority to execute a renegotiation agreement for the year 1943, as the United States also contends. Therefore we will remand the case to the Tax Court for its initial disposition of those questions.

■ One further point should be mentioned. The petitioner urges that in any event the unilateral order made by the representative of the United States, approved by the Tax Court, was invalid because made after the one year limitation contained in § 403(c) (3) of the 1943 Act, 58 Stat. 84, petitioner having agreed to no valid extension. As to this we disagree with petitioner and agree with the Tax Court, for the reasons given in its opinion. 20 T.C. 537.

Reversed and remanded.

---

8. We have considered the "Memorandum of Meeting on Hanlon-Waters Renegotiation for 1943" made by one of petitioner's negotiators, and the correspondence between the parties, set forth in the record, and find nothing in these documents which persuade us to a different conclusion than that we reach on consideration of the terms of the agreement itself.