*Decision will be entered under Rule 50.*

HANLON-WATERS, INC., PETITIONER, *v.* UNITED STATES, RESPONDENT.

Docket No. 534–R.    Filed March 6, 1956.

*Alexander M. Heron, Esq.*, for the petitioner.
*Frederick N. Curley, Esq.*, for the respondent.

## OPINION.

RAUM, *Judge:* This case is here on remand from the Court of Appeals for the District of Columbia, 222 F. 2d 798. The parties requested the opportunity for oral argument and the filing of additional briefs. Such request was granted. Oral argument was had and some delegations of authority made under the Renegotiation Acts of 1942 and 1943 were admitted in evidence. Additional briefs were filed.

The petitioner does not dispute the authenticity of the delegations of authority mentioned above, and they are incorporated by reference as part of the facts found by this Court (20 T. C. 537).

The controversy in this case results from the respondent's determination that the petitioner in the fiscal year ended December 31, 1943, had realized excessive profits which should be eliminated in the amount of $1,202,539.70. The petitioner alleged in its petition that this determination was in error because (1) the Board improperly included in petitioner's renegotiable business the proceeds and profits earned under three specifically enumerated contracts, since these contracts had been previously renegotiated on behalf of the United States by direction of the Under Secretary of War under a renegotiation agreement dated July 16, 1943; and (2) the order of the War Contracts Price Adjustment Board dated December 14, 1945, from which petitioner was appealing, was entered more than 1 year after the commencement of renegotiation.

This Court's opinion, dated May 29, 1953 (20 T. C. 537), held that the income from the three contracts realized by petitioner in 1943 was properly included in its renegotiable business for 1943 in accordance with paragraph III of the agreement dated July 16, 1943, and that no reopening under paragraph VI of that agreement was required. It also held that an agreement executed by petitioner's successor and the respondent was effective to extend the statutory period to December 31, 1945, and that the order entered within the period as extended was timely.

The petitioner appealed to the United States Court of Appeals for the District of Columbia, which, on April 14, 1955 (222 F. 2d 798), approved this Court's decision that the order was entered within the statutory period as extended. However, the Court of Appeals held that "a fair reading of the agreement leads to the conclusion that the United States agreed that the 'repricing' would be accepted as a final renegotiation of excessive profits for 1943 insofar as the specific three contracts and purchase orders were concerned, unless the United States exercised its discretion to reopen under the conditions of Paragraph VI." In remanding the proceeding to this Court for further action the Court of Appeals said (at p. 802):

Since the Tax Court found that the profits for 1943 were renegotiable under Paragraph III, without regard to Paragraph VI, it did not decide whether the Under Secretary of War or his representative had exercised his discretion to reopen under Paragraph VI, as the United States contends was done, or whether the negotiators for the Government were without authority to execute a renegotiation agreement for the year 1943, as the United States also contends. Therefore we will remand the case to the Tax Court for its initial disposition of those questions.

The agreement, dated July 16, 1943, was executed on September 10, 1943, by the petitioner and by the Division Engineer, Corps of Engineers, Southwestern Division, "By Direction of the Under Secretary of War Acting in behalf of the Secretary of War pursuant to authority conferred by subsection (f) of said Section 403, as amended." Paragraph I provided for the payment of $556,000 to the United States as representing the amount of excessive profits realized or likely to be realized by petitioner during its "fiscal year ending December 31, 1942," and which should be eliminated and refunded pursuant to the Renegotiation Act of 1942. Paragraph III required the petitioner to refund or credit to the United States an amount equal to 22½ per cent of the actual net sales of all units which as of July 16, 1943, were included in the following contracts:

Contract No. W-1465-eng-268 (Purchase Order No. M-1558)
Contract No. W-781-eng-1185 (Purchase Order No. DL-1004-OT-112)
Contract No. W-781-eng-1189 (Purchase Order No. DL-1009)

Paragraph III also provided:

The contractor represents that in its opinion such reductions are calculated to eliminate from the contracts enumerated above, profits found herein to have been realized, or likely to be realized, which should be eliminated pursuant to the provisions of the Act. The provisions of this paragraph, however, shall be without prejudice to subsequent renegotiation pursuant to the Act, relating to any fiscal year subsequent to the fiscal year ending December 31, 1942.

Paragraph V provided that the petitioner would furnish to the Under Secretary of War a written statement showing the actual results of its operations for the fiscal year 1943 under the certification of independent public accountants within a reasonable time after the end of that fiscal year.

Paragraph VI provided that:

The finding herein shall be deemed a final and conclusive determination of the profits of the contractor for the fiscal year 1942 under said contracts enumerated and described in "Exhibit A", and under contracts and purchase orders to the extent as set forth in Paragraph III hereof for the fiscal year 1943, which should be eliminated pursuant to the Act, subject to the right of the Under Secretary of War or his duly authorized representative, (a) to reopen the renegotiation in his discretion at any time within sixty (60) days after the contractor shall have filed with the Under Secretary of War a statement of financial statements provided for in Paragraph V herein, if the actual figures with respect to such factors as cost, volume of production and nature of products prove to be

materially at variance with the estimates on which the finding herein was based, and (b) to reopen the renegotiation in his discretion at any time hereafter upon a showing of fraud or malfeasance or a wilful misrepresentation of a material fact. Subject to the foregoing, performance by the contractor of this agreement shall be in full release and discharge of all liability of the contractor under the Act to refund or repay to the Government any amount of profits realized by said contractor under said contracts.

Paragraph VIII provided that:

This agreement has been duly executed by or on behalf of the contractor pursuant to proper authority and by or on behalf of the Secretary of War and by or on behalf of the Chairman of the Maritime Commission, pursuant to authority conferred by subsection (c) (4), Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, as heretofore amended. The authority of the Secretary and the Chairman has been duly delegated to the person executing this agreement in their behalf by delegations of authority and discretion made pursuant to subsection (f) of said Section 403, as amended.

On September 20, 1943, petitioner remitted to the Division Engineer the total sum of $2,499,920.76 in conformity with the requirements of the agreement. Of this amount, $556,000 represented refund of excessive profits with respect to 1942, and the remaining $1,943,920.76 represented refunds required with respect to the three contracts mentioned in paragraph III of the agreement. Subsequently, by letter dated October 2, 1945, from General Finance Corporation (which had meanwhile succeeded to the business of petitioner), the obligation to refund a further gross payment in the amount of $778,709.19 with respect to the three contracts was acknowledged, and payment in the net amount of $143,042.06 (computed after tax credits under section 3806 of the Internal Revenue Code of 1939), was simultaneously made. This last payment was made pursuant to the agreement dated July 16, 1943, but was paid and accepted with the understanding that the payment and its receipt should be without prejudice to the contentions of either of the parties with respect to their positions and claims relating to the July 16, 1943, agreement.

On April 8, 1944, Hanlon-Waters Division, General Finance Corporation, forwarded to the Contract Renegotiation Section of the Office of the Division Engineer, Southwestern Division, an audit report of petitioner for its 1943 operations. The submission of this audit report was the first submission of petitioner's complete operations for 1943. On April 24, 1944, the Division Engineer wrote petitioner that the matter of its statutory renegotiation proceedings had been assigned to his office and requested it to file a standard form of contractor's report in compliance with a provision of the Renegotiation Act of 1943 requiring the filing by contractors of financial statements. Thereafter, on May 1, 1944, petitioner sent to the Contract Renegotiation Division of the Office of the Division Engineer, Southwestern Division, the executed standard form of contractor's

report, calling attention to the audit previously filed and incorporating this audit into the report by reference.

On June 5, 1944, the following letter was mailed to Hanlon-Waters Division, General Finance Corporation, by the Division Engineer:

The War Contracts Price Adjustment Board has determined that renegotiation proceedings under the Renegotiation Act (Title VII of the 1943 Act) for your fiscal year ended December 31, 1943, shall be conducted initially by this office.

A conference with you with respect to this matter is hereby set for 26 June 1944 at the Office of the Division Engineer, 1114 Commerce Street, Dallas, Texas. If that time is not convenient, kindly advise us promptly in order that a continuance may be arranged.

This notice, sent by registered mail, constitutes commencement of the renegotiation proceedings in conformity with subsection (c) (1) of the Renegotiation Act.

This letter shall also constitute notice, if the same be necessary that, without admitting any of the terms or provisions of a renegotiation agreement dated July 16, 1943, and signed by Hanlon-Waters, Inc. included in any way a renegotiation of all or any part of the renegotiable business of said Hanlon-Waters, Inc. for fiscal year ended December 31, 1943, all matters in any wise relating to a consideration of business of said Hanlon-Waters, Inc. for the fiscal year ended December 31, 1943, pursuant to the Renegotiation Act, shall be and are hereby reopened.

By order dated December 14, 1945, respondent, through the War Department Price Adjustment Board, determined that $1,202,539.70 represented excessive profits for petitioner's fiscal year ended December 31, 1943, which should be eliminated. The same order recited the elimination of $398,016.50 by letter of October 2, 1945, leaving a balance due in the amount of $804,523.20. No review of the order being had, petitioner was notified of its finality by the War Contracts Price Adjustment Board on April 16, 1945.

The excessive profits of $1,202,539.70 included $599,268.46 of profits attributable to the three contracts.

Petitioner and respondent have agreed that if the income received by petitioner for its 1943 fiscal year under the three contracts is exempt from further renegotiation, then the amount of petitioner's profit which must be eliminated for its fiscal year ended December 31, 1943, is $603,271.24 less $398,016.50, or $205,254.74.

The petitioner contends that the agreement dated July 16, 1943, was never reopened and is final and binding according to its terms because (a) the letter of June 5, 1944, contains no suggestion that the Division Engineer was exercising authority delegated to him by the Under Secretary of War to reopen, or that there was a material variance between the actual figures and estimated figures; (b) the letter of June 5 reflects a considered decision not to invoke the authority of the Under Secretary and to proceed exclusively under the authority of the Renegotiation Act of 1943; and (c) since final action

concerning the elimination of excessive profits realized from the three contracts in question was taken by the War Contracts Price Adjustment Board such action was taken pursuant to the provisions of the Renegotiation Act of 1943 and not pursuant to the agreement of July 16, 1943.

Although there is some superficial plausibility to petitioner's contentions, careful reflection will show that they are without substance. The agreement dated July 16, 1943, provided that the findings therein as to excessive profits from the three contracts should be deemed a final and conclusive determination of profits which should be eliminated unless the "Under Secretary of War or his duly authorized representative" exercised the discretion given to reopen renegotiation within 60 days from the date a statement was furnished to the "Under Secretary of War" by the petitioner showing the actual results of its operations for the year 1943, if the actual figures with respect to such factors as cost, volume of production, and nature of product proved to be materially at variance with the estimates on which the findings made in the agreement were based. On April 8, 1944, petitioner sent the Division Engineer, Southwestern Division, an audit report showing the results of its 1943 operations and on June 5, 1944, within the 60-day period, the Division Engineer mailed a registered letter to petitioner. In this letter the Division Engineer advised petitioner that the War Contracts Price Adjustment Board had determined that renegotiation proceedings under the Renegotiation Act for its fiscal year ended December 31, 1943, should be conducted initially by his office; that the letter was notice of the commencement of the renegotiation proceedings in conformity with subsection (c) (1) of the Renegotiation Act; and that

This letter shall also constitute notice, if the same be necessary that, without admitting any of the terms or provisions of a renegotiation agreement dated July 16, 1943, and signed by Hanlon-Waters, Inc. included in any way a renegotiation of all or any part of the renegotiable business of said Hanlon-Waters, Inc. for fiscal year ended December 31, 1943, all matters in any wise relating to a consideration of business of said Hanlon-Waters, Inc. for the fiscal year ended December 31, 1943, pursuant to the Renegotiation Act, shall be and are hereby reopened.

The letter was signed "For the Division Engineer:" by Herbert M. Tatum, Captain, Corps of Engineers, Contract Renegotiation Division.

It is true, as petitioner argues, that no suggestion was made that the letter was intended to exercise the authority of the Under Secretary of War, and that there was no statement in the letter that a material variance had been found between the actual figures in the audit report and the estimated figures on which the findings in the July 16, 1943, agreement were based. But we do not think this rendered the noti-

fication ineffective as a reopening of renegotiation as to the three contracts.

The agreement of July 16, 1943, did not require that the Under Secretary of War or his duly authorized representative notify the petitioner that a material variance had been found. All that was necessary under its provisions was that there be an administrative determination that such a variance existed, and that petitioner be notified by the Under Secretary or his duly authorized representative of reopening of renegotiation. Obviously, if a material variance had not been found and did not exist, a notice of reopening would serve no useful purpose and petitioner would not be here urging that the July 16, 1943, agreement was never reopened. That a material variance did in fact exist is indicated by the stipulation of the parties that the excessive profits which must be eliminated for the year 1943 will be $599,268.46 more if the income received by petitioner from the three contracts is not exempted from petitioner's 1943 renegotiation than it will be if such income is exempted.

The Division Engineer, Southwestern Division, was the official who signed the agreement of July 16, 1943, by direction of the Under Secretary of War. He also was the official to whom the petitioner, on April 8, 1944, sent the audit report showing the results of its 1943 operations which, under the provisions of paragraph V of the agreement, was to be furnished "to the Under Secretary of War." The Division Engineer notified the petitioner in the last paragraph of the letter of June 5, 1944, after referring to the July 16, 1943, agreement, that all matters in any wise relating to a consideration of its business for the fiscal year ended December 31, 1943, pursuant to the Renegotiation Act (which included the income from the three contracts), were reopened. Under both the Renegotiation Act of 1942 and the Renegotiation Act of 1943, there had been delegated to the Division Engineer authority to act for the Under Secretary of War "to reopen the renegotiation with the contractor * * * in cases in which the renegotiation agreement permits such reopening after statements showing the actual results of operations covered by the renegotiation agreement became available."[1] This authority came from the Under Secretary of War, notwithstanding that the superior renegotiating authorities under the 1942 and 1943 Renegotiation Acts were the Secretary of War and the War Contracts Price Adjustment Board, respectively. The notification of reopening was, therefore, the act of the duly authorized representative of the Under Secretary of War. The events which preceded the notification should have put petitioner

---

[1] Delegation of Authority by Under Secretary of War to Chiefs of Technical Services, August 6, 1943, Ex. VV; Redelegation of Authority by Chief of Engineers to Division Engineers, August 21, 1943, Ex. 12–L; Delegation of Authority by Under Secretary of War to Chiefs of Technical Service, February 26, 1944, Ex. YY; Redelegation of Authority by Chief of Engineers to Division Engineers, March 30, 1944, Ex. ZZ.

on notice that the Division Engineer was such representative. Even if it be assumed that they did not do so, we think the fact that a duly authorized representative of the Under Secretary of War notified petitioner of reopening satisfied the requirements prescribed for such reopening contained in paragraph VI of the July 16, 1943, agreement.

We are unable to agree with petitioner's contention that the letter of June 5, 1944, reflects a considered decision to proceed exclusively under the authority of the Renegotiation Act. It is true that in that letter the Division Engineer was following the procedure set forth in the Act when he informed petitioner that the War Contracts Price Adjustment Board had determined that renegotiation proceedings for its fiscal year ended December 31, 1943, were to be conducted initially by his office, and when he notified petitioner of the commencement of renegotiation proceedings for that year, and of the time and place of conference to be held with respect thereto, in conformity with subsection (c) (1) of the Act. But in the last paragraph of the letter, when he referred to the agreement of July 16, 1943, and stated that all matters in any wise relating to a consideration of petitioner's business, pursuant to the Act, which included the profits from the three contracts, were reopened, he was not proceeding solely under the authority of the Act. He was proceeding to remove an obstacle which would have prevented the consideration of a part of petitioner's business pursuant to the Act. The source of his right to remove this obstacle was the agreement of July 16, 1943, and not the Renegotiation Act, and his reference to that agreement indicates he was aware of this fact. We think it is reasonable to assume in these circumstances that he was proceeding as the authorized representative of the Under Secretary of War to exercise the right to reopen renegotiation reserved in the agreement, and we hold that the last paragraph of the letter of June 5, 1944, was effective to reopen renegotiation and pave the way for a determination of the excessive profits from the three contracts which should be eliminated.

The Court of Appeals for the District of Columbia, in its opinion by which this proceeding was remanded, stated (at page 802) that "In the event of such reopening Paragraph III means that the subsequent renegotiation would not be prejudiced by the fact that a 22½% reduction had previously been agreed to for 1943." There is nothing in the agreement of July 16, 1943, which requires subsequent renegotiation, after reopening, to be conducted pursuant to the provisions of that agreement. The effect of the reopening was to permit the profits from the three contracts to be considered in connection with the renegotiation of petitioner's renegotiable business for the year in which those profits were realized. That was the fiscal year ended December 31, 1943. Power to renegotiate as to fiscal years ending

after June 30, 1943, is vested in the War Contracts Price Adjustment Board by subsection (c) (1) of the Renegotiation Act of 1943. The Board properly exercised that power when it determined as a result of renegotiation proceedings conducted for petitioner's fiscal year ended December 31, 1943, that petitioner had realized excessive profits, from the three contracts and its other renegotiable contracts during that year, which should be eliminated in the amount of $1,202,539.70.

Respondent makes an alternative contention that the Division Engineer was without authority to execute the agreement of July 16, 1943, if that agreement constituted a renegotiation agreement for the three contracts during petitioner's 1943 fiscal year. The objective of this contention is to permit a determination of the excessive profits from the three contracts in the event that this Court should hold that such determination could not be made because there was no reopening of renegotiation in accordance with paragraph VI of the agreement. Having held that renegotiation was reopened by the letter of June 5, 1944, and that the respondent correctly determined the amount of the excessive profits of petitioner for its year ended December 31, 1943, which should be eliminated, no useful purpose would be served by considering the respondent's alternative contention.

*Decision will be entered for the respondent*