**UNITED STATES of America, Petitioner,**

v.

**NORTHWEST AUTOMATIC PRODUCTS CORPORATION, Respondent.**

No. 13029.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 8, 1956.

Decided Dec. 13, 1956.

6. Id. at page 106.
7. Id. at pages 106–107.
8. Id. at page 107.

Mr. Melvin Richter, Attorney, Department of Justice, with whom Mr. Leo A. Rover, U. S. Atty. at time the brief was filed, was on the brief, for petitioner.

Mr. Benedict S. Deinard, Minneapolis, Minn., of the bar of the Supreme Court of Minnesota, pro hac vice, by special leave of Court, with whom Mr. Ellis Lyons, Washington, D. C., was on the brief, for respondent.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

## PER CURIAM.

This is a petition to review a decision of the Tax Court of the United States in a renegotiation case. That court held renegotiation barred because not timely commenced. The United States petitioned for review.

Several sections of the statute constitute the premise for the controversy. They are set forth in the margin.[1] In essence they are that (1), when the War Contracts Price Adjustment Board is of opinion that the amounts received by a contractor are excessive, it shall give reasonable notice "of the time and place of a conference"; (2) "[t]he mailing of such notice by registered mail to the contractor or subcontractor shall constitute the commencement of the renegotiation proceeding"; (3) renegotiation proceedings cannot be commenced more than one year after the close of the fiscal year involved, or after a statement required by the statute to be filed by the contractor is filed, whichever date is later; and (4) an order determining excessive profits must be made within one year after renegotiation proceedings are commenced.

1. 56 Stat. 245 (1942), as amended, 50 U.S. C.A.Appendix, § 1191:

"(c) * * *

"(1) Whenever, in the opinion of the Board, the amounts received or accrued under contracts with the Departments and subcontracts may reflect excessive profits, the Board shall give to the contractor or subcontractor, as the case may be, reasonable notice of the time and place of a conference to be held with respect thereto. The mailing of such notice by registered mail to the contractor or subcontractor shall constitute the commencement of the renegotiation proceeding. * * *

"* * * *

"(3) No proceeding to determine the amount of excessive profits shall be commenced more than one year after the close of the fiscal year in which such excessive profits were received or accrued, or more than one year after the statement required under paragraph (5) [of this subsection] is filed with the Board, whichever is the later, and if such proceeding is not so commenced, then upon the expiration of one year following the close of such fiscal year, or one year following the date upon which such statement is so filed, whichever is the later, all liabilities of the contractor or subcontractor for excessive profits received or accrued during such fiscal year shall thereupon be discharged. If an agreement or order determining the amount of excessive profits is not made within one year following the commencement of the renegotiation proceeding, then upon the expiration of such one year all liabilities of the contractor or subcontractor for excessive profits with respect to which such proceeding was commenced shall thereupon be discharged, except that (A) if an order is made within such one year by the Secretary (or an officer or agency designated by the Secretary) pursuant to a delegation of authority under subsection (d) (4) [of this section], such one-year limitation shall not apply to review of such order by the Board, and (B) such one-year period may be extended by mutual agreement."

The controversy here revolves around dates:

*December 31, 1944.* The fiscal year involved ended.

*April 30, 1945.* The Standard Form of Report was filed by the contractor.

*May 8, 1945.* The Chicago Ordnance District advised the contractor, by ordinary mail, that renegotiation of its profits for 1944 had been assigned to that office and that a "preliminary conference" expedites the work. It set a time and place for such a conference. Conferences were held from that time until May 1, 1946.

*November 14, 1945,* and *February 11, 1946.* Additional information requested from the contractor supplemental to the Report was filed. This information consisted in part of intercompany audits.

*May 1, 1946.* The Ordnance District advised the contractor, by registered mail, that the Board had determined that renegotiation proceedings for 1944 "shall be conducted initially by this office." That letter also said: "This notice, sent by registered mail, constitutes commencement of the renegotiation proceedings in conformity with the provisions of subsection (c) (1) of the Renegotiation Act." The letter did not mention a conference or set any time or place for one.

*April 21, 1947.* The Board sent the contractor, by registered mail, a letter saying that "[a] final renegotiation conference" would be held at a certain time and place.

*April 30, 1947.* A unilateral order was entered determining that the contractor had received excessive profits for 1944 in the amount of $180,275.52.

The Government presented several theories to the Tax Court. In response to those contentions that court reached several conclusions. It held that the letter of May 8, 1945, did not commence renegotiation, since it referred only to a preliminary conference and was not sent by registered mail as the statute required. Moreover, it concluded, if renegotiation commenced at that date, the termination, on April 30, 1947, was not timely, being more than one year later. The Tax Court held that the letter of May 1, 1946, did not commence renegotiation, because it did not set a time and place for a conference as the statute required. The Tax Court held that the letter of April 21, 1947, was not a valid commencement of proceedings, because it was not timely filed. In connection with this latter point the court held that the contractor's Report had been filed in complete and final form no later than February 11, 1946.

The first question before us is whether we have jurisdiction to review a determination of the Tax Court as to the commencement of a renegotiation proceeding. We held in United States v. Martin Wunderlich Co.[2] that we have no jurisdiction in such a matter, and we now adhere to that ruling. In Ebco Manufacturing Co. v. Secretary of Commerce[3] the Court of Appeals for the Sixth Circuit expressed approval of our view in Wunderlich in the light of the Supreme Court's opinion in California Eastern.[4]

Petitioner urges that our later ruling in Hanlon-Waters, Inc., v. United States[5] is to the contrary. We do not so construe that opinion. The same division of this court which decided Wunderlich also decided Hanlon-Waters, unanimously and without mentioning the former case. An important jurisdictional question was presented and decided in Hanlon-Waters, namely, whether we could review the Tax Court's decision that the parties had made a final settlement; but no jurisdictional question was raised with respect to the untimeliness of the order of the renegotiating authority itself. The Tax Court had held that the order was not untimely, since it was made within the time validly extended by agreement of the parties. After hold-

2. 94 U.S.App.D.C. 8, 211 F.2d 433 (1954).

3. 221 F.2d 902 (1955).

4. United States v. California Eastern Line, 348 U.S. 351, 75 S.Ct. 419, 99 L.Ed. 383 (1955).

5. 96 U.S.App.D.C. 5, 222 F.2d 798 (1955).

ing that we had jurisdiction to review the merits of the Tax Court's decision on the question whether there had been a final settlement between the parties, we added our agreement with the Tax Court's decision on the validity of the extension of time within which the order of the renegotiating authority had been made. Perhaps we could have said we lacked jurisdiction to consider the validity of the extension, which would have led to the same result. Perhaps, also, our choice of basis for disposing of the matter was due to the fact that the jurisdictional question argued and decided related only to the question of a final settlement and did not involve the timeliness of the order of the renegotiating authority. In any event, what we said is not to be viewed as overruling Wunderlich. In this connection it is important to remember that the limitation upon commencement of proceedings may begin to run when the contractor's Report is finally filed, and that complete filing is often a matter of accounting calculations and adjustments, matters typically within the special competence of the Tax Court and so not reviewable here under statute.

Petition for review dismissed for lack of jurisdiction.