UNITED STATES ᴇᴛ ᴀʟ. *v.* CALIFORNIA EASTERN
LINE, INC.

No. 263.   Argued February 10, 1955.—Decided March 7, 1955.

*Oscar H. Davis* argued the cause for petitioners.   With
him on the brief were *Solicitor General Sobeloff, Assistant
Attorney General Burger* and *Melvin Richter.*

*Harold B. Finn* argued the cause for respondent.   With
him on the brief were *Cletus Keating* and *Robert E.
Kline, Jr.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The Renegotiation Act of 1942 as amended sets up departmental and Tax Court procedures to save the United States from the burden of "excessive profits" made by private contractors under war contracts with Government "Departments." [1] The question in this case is whether an order entered by the Tax Court under that Act is reviewable by the United States Court of Appeals for the District of Columbia Circuit.

In 1941 the Maritime Commission, defined as a "Department" in the Act, was charged with responsibility for aiding the British Government in the transport of war equipment and supplies for use in World War II. Respondent, California Eastern Line, Inc., among others, was asked by the Commission to carry supplies to the Red Sea area for the African campaign. After extensive negotiations respondent agreed with the Commission on detailed contractual terms for the carriage. And it was agreed that respondent would be paid by the Commission out of funds appropriated by Congress under the so-called Lend-Lease Act.[2] It was also understood that a written contract embodying only the terms previously agreed on would be executed between the respondent and the British Ministry of Transport. The charter was executed after respondent's boat had already sailed with its war cargo. In accordance with its agreement, the Commission paid the respondent about $351,000 for the carriage. Later the Commission chairman, after conforming with required procedure, determined that respondent should repay $164,000 as "excessive profits." Respondent took the matter to the Tax Court under § 403 (e)(1) of the Act which authorizes that court "to finally determine the amount, if any, of excessive profits" and provides that

---

[1] 56 Stat. 245, as amended, 50 U. S. C. App. § 1191.

[2] 55 Stat. 31, 22 U. S. C. §§ 411–413.

"such determination shall not be reviewed or redetermined by any court or agency." But that court made no finding or determination at all about profits. It disposed of the whole case by finding as a fact and holding as a matter of law that the only contract was in the written charter with the British Ministry in which the Commission was not named as a party and that consequently the Commission had made no renegotiable contract within § 403 (e)(1) of the Renegotiation Act. 17 T. C. 1325.

The United States sought review in the Court of Appeals for the District of Columbia Circuit under the broad grant of jurisdiction in 26 U. S. C. § 1141 which vests Courts of Appeals with "exclusive jurisdiction to review the decisions of the Tax Court . . . ."[3] The Court of Appeals held that § 1141 does authorize review of Tax Court renegotiation orders with the exception of determinations as to profits which § 403 (e)(1) of the Renegotiation Act states shall not be reviewed by any court or agency. Viewing the issue decided by the Tax Court as coming within the nonreviewable category, the Court of Appeals dismissed. 93 U. S. App. D. C. 289, 211 F. 2d 635. The Ninth Circuit has construed § 1141 differently, however, holding that it gives Courts of Appeals no power whatever to review Tax Court renegotiation orders. *French* v. *War Contracts Price Adjustment Board,* 182 F. 2d 560. Never having passed on this jurisdictional question, we granted certiorari to decide it. 348 U. S. 810.

The language of § 1141 is broad enough to justify review of Tax Court renegotiation orders. And we cannot say that because the section was originally passed primarily to authorize review of decisions on revenue matters it

---

[3] § 1141 of the Internal Revenue Code of 1939. Similar provisions now appear in § 7482 of the Internal Revenue Code of 1954. Section 1141 contains exceptions to its general grant of jurisdiction to Courts of Appeals, but they are not relevant here.

should be held inapplicable to decisions on other justiciable matters entrusted to the Tax Court by Congress. As long ago as 1946 the Court of Appeals for the District of Columbia interpreted § 1141 as authorizing review of renegotiation orders.[4] It has followed that interpretation in a number of later cases, including this one.[5] All of these cases, however, have recognized that the scope of § 1141 review over renegotiation orders is narrowed by that part of the Renegotiation Act that makes nonreviewable Tax Court determinations of amounts of excess profits, if any. This reconciliation of § 1141 with the Renegotiation Act has a permissible basis, and accordingly we see no reason to upset the review practice that has grown up under it. Under this practice, the particular order here is reviewable under § 1141 unless it is a determination of "the amount, if any, of excessive profits" within the meaning of § 403 (e)(1) of the Act. The Court of Appeals, relying on *Macauley* v. *Waterman S. S. Co.*, 327 U. S. 540, held that it was. On this point we disagree.

In making determinations as to excess profits the Tax Court must decide at least two separate but interrelated questions: (1) whether a renegotiable contract is involved and (2) the amount if any of excessive profits. We held in the *Waterman* case that the Tax Court has primary, exclusive jurisdiction to decide whether a contract is renegotiable. That result was reached because the Act gives the Tax Court exclusive jurisdiction to determine the amount of profits and the existence of a

---

[4] *U. S. Electrical Motors, Inc.* v. *Jones*, 80 U. S. App. D. C. 329, 153 F. 2d 134.

[5] *Psaty & Fuhrman, Inc.* v. *Stimson*, 87 U. S. App. D. C. 47, 182 F. 2d 985; *Lowell Wool By-Products Co.* v. *War Contracts Price Adjustment Board*, 89 U. S. App. D. C. 281, 192 F. 2d 405; *Knu-Vise, Inc.* v. *War Contracts Price Adjustment Board*, 90 U. S. App. D. C. 218, 195 F. 2d 198.

renegotiable contract is essential to such a determination. In *Waterman,* however, we did not decide any question concerning the reviewability of Tax Court orders entered under the Renegotiation Act.

The language and history of the Renegotiation Act make it pretty clear that the Tax Court was selected to handle excess profits cases because of that Court's special familiarity with all kinds of business and accounting practices in regard to profits, losses, etc. Thus it is easy to understand why Congress in § 403 (e)(1) spelled out with meticulous clarity that Tax Court determinations of the amount of excessive profits, if any, should be final and nonreviewable. We agree that a § 1141 Court of Appeals review should not upset such determinations. But we do not agree that the Tax Court's determination here is in that category. The question of the amount of profits was not even reached by the Tax Court. It simply held, relying largely on common law principles of contract law, that there was no government contract to renegotiate. The existence or nonexistence of profits was wholly irrelevant to the holding. Consequently this is not the kind of determination that § 403 (e)(1) makes final and the Tax Court's decision in this case is therefore subject to the normal type of review authorized by § 1141.

*Reversed.*

Mr. Justice Douglas dissents.