**LITTON INDUSTRIES OF MARYLAND, INC., Petitioner,**

v.

**The RENEGOTIATION BOARD, Respondent.**

**No. 8441.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 16, 1961.

Decided Jan. 5, 1962.

James V. Ryan, New York City, for petitioner.

Herbert E. Morris, Attorney, Department of Justice, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., and Alan S. Rosenthal, Attorney, Department of Justice, Washington, D. C., on brief), for respondent.

Before SOPER and BOREMAN, Circuit Judges, and NORTHROP, District Judge.

SOPER, Circuit Judge.

Litton Industries of Maryland, Inc., seeks review of a decision of the Tax Court that the court had no jurisdiction to review a determination of the Renegotiation Board wherein Litton was denied the right to renegotiate a Government contract upon which it had suffered a loss of $100,000 in 1953. The Board had determined that Litton had made excessive profits of $450,000 on other contracts in that year against which Litton desired to offset the loss of $100,000. The Tax Court's conclusion that it had no power to review the Board's determination presents the primary question for decision.

The Renegotiation Act of March 23, 1951, Sections 101 to 113, 50 U.S.C.A. Appendix, §§ 1211 to 1223, provides for the renegotiation of certain contracts made by the United States for the purpose of national defense so as to eliminate excessive profits therefrom. The Act was passed to procure the renegotiation of contracts made during the emergency of the Korean War. By Section 102 the Act is made applicable to contracts with certain Departments of the Government enumerated in Section 103 to the extent of amounts received by contractors on or after the 1st day of January 1951, whether such contracts were made on, before, or after that date. Certain contracts enumerated in Section 106 are excluded, including any contract which the Renegotiation Board, created by Section 107 of the Act, shall determine to be exempt. To perform this function the Board is given power to prescribe regulations designating the classes of contracts which shall be exempt, and is directed in accordance with such regulations to exempt any contract if it determines that the contract has no direct and immediate connection with national defense. Section 106(a) (6). The Board is given power to determine the amount of excessive profits under contracts covered by the statute, Section 105; and jurisdiction is conferred upon the Tax Court, upon the petition of an aggrieved party, to review the orders of the Board determining the amount of excessive profits received by a contractor; and it is provided that the Tax Court shall have exclusive jurisdiction to determine de novo the amount of excessive profits and that its determination shall not be reviewed or redetermined by any court or agency. Section 108.

Certain determinations of the Board, however, are specifically excluded from review by the Tax Court. It is provided in Section 106(a) (6) that notwithstanding Section 108, regulations of the Board designating exempt classes and any determination of the Board that a contract is or is not exempt "shall not be reviewed or redetermined by the Tax Court or by any other court or agency".[1]

The particular contract with which we are concerned in this case was entered into on January 23, 1951 between Litton and the Civil Aeronautics Administration for the design of a range system to be utilized on domestic airways. Subsequently, on March 23, 1951 the Renegotiation Act of 1951 went into effect and on December 21, 1951 a renegotiation clause was added to the contract in conformity with Section 104 of the Act which requires that in every contract covered by the Act there be inserted a provision for renegotiation, that is in every contract made on, before or after January 1, 1951, to the extent of the amounts received on or after that date. This provision, however, is expressly made subject to Section 106(a) of which subsection (6) exempts from the statute any contract which the Board determines not to have a direct connection with national defense; and it is also made subject to Section 104(4) which provides that a renegotiation clause so inserted in a contract shall be binding on a contractor only if the contract is subject to the Act. Thereafter on September 30, 1953 the Board promulgated an addition to regulation 1453.5(b) (7), 32 C.F.R. 1453.5(b) (7), wherein it determined that all contracts of the Civil

1. The full text of Section 106(a) (6) is as follows: It excludes "Any contract which the Board determines does not have a direct and immediate connection with the national defense. The Board shall prescribe regulations designating those classes and types of contracts which shall be exempt under this paragraph; and the Board shall, in accordance with regulations prescribed by it, exempt any individual contract not falling within any such class or type if it determines that such contract does not have a direct and immediate connection with the national defense. Notwithstanding section 108 of this title, (section 1218 of this Appendix), regulations prescribed by the Board under this paragraph, and any determination of the Board that a contract is or is not exempt under this paragraph, shall not be reviewed or redetermined by the Tax Court or by any other court or agency."

Aeronautics Administration, (except those entered into at the request of the Department of Defense, Department of the Army, Department of the Navy, or Department of the Air Force), do not have a direct and immediate connection with national defense; and thereafter the Board determined that the Litton contract fell within the terms of the regulation and was exempt from renegotiation.

■ It was under these circumstances that Litton filed a petition for review of the Board's determination with the Tax Court, and the court held that under the terms of Section 106(a) (6) it was without jurisdiction to entertain the petition. Litton contends to the contrary that the Tax Court does have power to review the determinations of the Board on questions of jurisdiction and constitutionality and that this court has jurisdiction to review the decisions of the Tax Court on these questions under the appellate jurisdiction conferred upon it by statute. 26 U.S.C. § 7482(a), formerly Section 1141 of the 1939 Code. This contention rests in a large part on Section 108 of the statute which gives the Tax Court exclusive jurisdiction to finally determine the amount of excessive profits under a contract subject to renegotiation. It has been decided that a similar provision in an earlier statute empowers the Tax Court to pass on questions of coverage or jurisdiction. Thus in Macauley v. Waterman, S. S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839, it was held that under Section 403(e) (1) of the Renegotiation Act of 1942, as amended, 50 U.S.C.A.Appendix, § 1191(e) (1), which was similar to the corresponding Section 108 of the Act of 1951, the Tax Court had authority not only to decide de novo the amount of excessive profits under a contract but also to decide whether the contract was renegotiable. It was pointed out that in order for the Tax Court to pass on the amount of the profits derived from a contract it was necessary to decide whether the contract was covered by the Act. Again it was decided in United States v. California Eastern Line, 348 U.S. 351, 75 S.Ct. 419, 99 L.Ed. 383, that questions of coverage under the Act of 1942 were reviewable by the Tax Court and that its decisions on such matters were subject to review by the Courts of Appeal under 26 U.S.C. § 1141. Because of these decisions it is urged upon us that the Tax Court in the present case had the power to decide whether the Litton contract was exempt from renegotiation and this court has the power to review the Tax Court's decision.

We do not think that this argument is tenable. The situation has changed from that considered by the Supreme Court in Macauley v. Waterman S. S. Corp., and United States v. California Eastern Line, supra. These cases arose under the Renegotiation Act of 1942 wherein Section 403(e) (1), like Section 108 of the Act of 1951, clothed the Tax Court with power to determine the amount of excessive profits earned under a renegotiable contract; but the earlier act contained no provision similar to Section 106(a) (6) of the Act of 1951 which was passed after the decision of the Supreme Court in the Macauley case. By that section Congress, in the exercise of its power to establish the jurisdiction of the federal courts, expressly provided that the power of review given to the Tax Court by Section 108 should not include the power to review determinations of the Board under Section 106(a) (6), and thereby withdrew from the Tax Court authority to pass upon the question of coverage which arises when the Board has classified certain contracts as exempt and has determined in a particular case that a contract falls within the exempt classification. The scope of review conferred upon the Tax Court by the Act of 1942 has been narrowed in the Act of 1951 and it is not now possible to interpret Section 108 of the Act of 1951 as extending the jurisdiction of the Tax Court to review questions of coverage under the Act of 1951 as was done in the decisions of the Supreme Court with respect to Section 403(e) (1) of the Act of 1942.

■ Litton further contends, (1) that Congress did not intend to confer upon the Board the power to give retroactive

effect to its regulations and to determine finally and without review that a contract made before the promulgation of a regulation was exempt from renegotiation; and (2) if Congress did so intend, the statutory provision is unconstitutional. Litton seems to say that Section 106(a)(6) prohibits court review of actions of the Board in designating the classes of exempt contracts and in promulgating appropriate regulations to this end but does not prohibit review of the Board's later determinations exempting individual contracts from renegotiation in accordance with these regulations. This view is obviously incorrect however, since Section 106(a)(6) clearly says that the Board shall exempt in accordance with its regulations any contract which does not have a direct connection with the national defense and that its determination that a contract is or is not exempt shall not be reviewed by any court or agency. Litton, however, goes further. It says that Congress did not intend to empower the Board to pass retroactive regulations. It is not denied that it was within the power of Congress to make the statute retroactive, indeed it was so held in Lichter v. United States, 334 U.S. 742, 789, 68 S.Ct. 1294, 92 L.Ed. 1694, but it is said that there is nothing in the Act which reflects any intention on the part of Congress to grant to the Board the authority to make its regulations retroactively effective to January 1, 1951.[2]

The scheme of the Act, however, plainly refutes this contention. The statute was passed to make possible the renegotiation of contracts made during a war emergency and the Act was made specifically applicable by Section 102 to all renegotiable contracts made on, before or after January 1, 1951 as to moneys received on or after that date; and all the provisions of the Act were made applicable to all of such contracts. The classification of contracts as renegotiable or exempt was covered by certain specific provisions of the statute and, in addition, the Board was empowered further to classify the contracts in order to give flexibility to the program and to take care of variable conditions that might arise after the enactment of the statute. Lichter v. United States, 334 U.S. 785, 68 S.Ct. 1294. This was obviously an important feature of the statute and since the Act itself was retroactive it is unreasonable to suppose that the Board's authority was limited to contracts made after the enactment of the statute or after the promulgation of its regulations to the exclusion of contracts previously made. Ordinarily the exemption of a contract from the restriction upon profits would be beneficial to the contractor and it could not have been the intent of Congress to prohibit the Board from extending this benefit to a contractor simply because the contract was made before the Board found that it had no connection with national defense. The propriety of delegating this authority to the Board as an effective means of carrying out the purpose of the Act was decided in the Lichter case. 334 U.S. 778–783, 68 S.Ct. 1294, 92 L.Ed. 1694.

■ Litton also attacks the constitutionality of Section 106(a)(6) on the ground that Congress cannot empower an agency to make an exclusive and final determination of the property rights of a citizen without giving him a hearing or an opportunity for review by the courts, such as is given by Section 108 of the statute and was found adequate to meet constitutional objections to the statute in Lichter v. United States, 334 U.S. 742, 789, 791–792, 68 S.Ct. 1294, 92 L.Ed. 1694. Reliance is placed on the decisions of the courts interpreting statutes which

2. The sequence of events was as follows: The contract between Litton and the Civil Aeronautics Administration was made on January 23, 1951; the statute became effective March 23, 1951; the renegotiation clause was inserted in the contract on December 21, 1951. On March 21, 1952 the Board adopted regulation 1453.5(b)(7), excluding certain classes of contracts from the Act. Thereafter, on September 30, 1953 the regulation was amended by addition so as to declare that contracts with the Civil Aeronautics Administration had no connection with the national defense and were, therefore, exempt.

fix or control the price of commodities or wages and hours of labor such as United States v. Rock Royal Co-op., 307 U.S. 533, 576, 59 S.Ct. 993, 83 L.Ed. 1446; Opp Cotton Mills v. Administrator of Wage and Hour Division of Department of Labor, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624; Yakus v. United States, 321 U.S. 414, 434, 64 S.Ct. 660, 88 L.Ed. 834. Thus it was pointed out in Opp v. United States, 312 U.S. at 152–153, 61 S.Ct. 524, wherein the wage and hour provisions of the Fair Labor Standard Act, 29 U.S. C.A. § 201 et seq. were considered, that the demands of due process do not require a hearing at any particular point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective.

These decisions, however, do not prescribe the procedure to be followed under statutes wherein the United States "creates rights in individuals against itself." In such case the United States is not bound to provide an administrative remedy or a review by the courts. Thus in Lynch v. United States, 292 U.S. 571, 582, 54 S.Ct. 840, 845, 78 L.Ed. 1434, it was said "When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. * * *. It may limit the individual to administrative remedies. * * * And withdrawal of all remedy, administrative as well as legal, would not necessarily imply repudiation. So long as the contractual obligation is recognized. Congress may direct its fulfillment without the interposition of either a court or an administrative tribunal." Again in Stark v. Wickard, 321 U.S. 288, 306, 64 S.Ct. 559, 569, 88 L.Ed. 733, it was said:

"However, even where a complainant possesses a claim to executive action beneficial to him, created by federal statute, it does not necessarily follow that actions of administrative officials, deemed by the owner of the right to place unlawful restrictions upon his claim, are cognizable in appropriate federal courts of first instance. When the claims created are against the United States, no remedy through the courts need be provided. * * * To reach the dignity of a legal right in the strict sense, it must appear from the nature and character of the legislation that Congress intended to create a statutory privilege protected by judicial remedies."

And in Dismuke v. United States, 297 U.S. 167, 171, 56 S.Ct. 400, 403, 80 L.Ed. 561, the court said, "The United States is not, by the creation of claims against itself, bound to provide a remedy in the courts. It may withhold all remedy or it may provide an administrative remedy and make it exclusive, however mistaken its exercise. See United States v. Babcock, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011." See also Hijos v. Benson, (C.A. D.C.) 231 F.2d 251.

These decisions chart the course to be followed in this case. That which Litton seeks is the enforcement of the right granted by Section 105(a) of the statute which provides that the Board shall endeavor to agree with a contractor with respect to the elimination of the aggregate excessive profits received during a fiscal year under a Government contract and not separately with respect to the amount received under separate contracts, unless the contractor requests otherwise. The right conferred upon the contractor to aggregate the amounts received was not a term of the contract of January 23, 1961 but was created by the provisions of the statute subsequently enacted. There is no contention that the computation made by the Board of excess profits has been incorrectly made. Nor is there any contention that the Board incorrectly determined that the contract had no connection with national defense and was, therefore, exempt from renegotiation. The claim in this phase of the case is that the grant of authority to the Board to make retroactive decisions was beyond the powers of Congress unless it was subject to review by the courts; but this contention, as we have seen, conflicts with the controlling decisions of the court. The judgment of the Tax Court must, therefore, be affirmed.

Affirmed.