UNITED STATES of America, Plaintiff,

v.

ROCKLAND STEAMSHIP CORPORATION, Defendant.

UNITED STATES of America, Plaintiff,

v.

KINGSTON STEAMSHIP CORPORATION, Defendant.

United States District Court
S. D. New York.
June 7, 1963.

---

103. Tr. p. 1817.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, for plaintiff; John Paul Reiner, Asst. U. S. Atty., of counsel.

Robert A. Kagan, Great Neck, N. Y., for defendants.

FEINBERG, District Judge.

The Government has filed two separate complaints under the Renegotiation Act, 50 U.S.C.App. §§ 1211–1233 (sometimes referred to herein as "the Act"), to recover excess profits from defendants Rockland Steamship Corporation ("Rockland") and Kingston Steamship Corporation ("Kingston"). Defendants' ships transported goods for the Armed Services pursuant to contracts with the Department of the Navy. Subsequently, renegotiation proceedings were conducted under the Act, and the Renegotiation Board finally determined that defendant Rockland realized excess profits of $125,-000, and defendant Kingston realized excess profits of $150,000. In accordance with the Act, defendants were allowed tax credits for taxes paid on the excess profits determined by the Board.[1] This reduced the net amounts claimed by the Government to $60,000 from defendant Rockland and $72,000 from defendant Kingston, plus four per cent interest from July 15, 1960. Defendants were notified of the final decisions of the Board. Thereafter, payment was demanded in July 1960, but not made. The above facts do not appear to be in dispute.

The Government's action in this Court is brought under a section of the Act which authorizes suits to recover excess profits as determined by the entry of a Renegotiation Board order.[2] The Act permits an allegedly aggrieved contractor to stay the operation of the Board's order while the contractor seeks a redetermination of the alleged excess profits in the Tax Court. The filing by the contractor of a petition in the Tax Court for a "de novo" proceeding stays the operation of the order if the contractor posts a bond in the Tax Court.[3] In September 1960, defendants filed petitions in the Tax Court for a redetermina-

1. 50 U.S.C.App. § 1215(b) (8).

2. 50 U.S.C.App. § 1215(b) (1) (D), (b) (3).

3. 50 U.S.C.App. § 1218 provides:
   "Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may—

   *     *     *     *     *
   file a petition with The Tax Court of the United States for a redetermination thereof. Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined

tion of excess profits under the Act and explicitly raised the issue there as to whether the contracts involved were subject to renegotiation under the Act. However, defendants did not post any bond in the Tax Court, so the order of the Renegotiation Board is not stayed.

The Government brought its action in this Court in March 1961. The Government and defendants have each moved in this Court for summary judgment. Defendants contend that, as a matter of law, the contracts are not subject to the Act because of the effect of 10 U.S.C. § 2631, which provides:

> "Only vessels of the United States or belonging to the United States may be used in the transportation by sea of supplies bought for the Army, Navy, Air Force, or Marine Corps. However, if the President finds that the freight charged by those vessels is excessive or otherwise unreasonable, contracts for transportation may be made as otherwise provided by law. Charges made for the transportation of those supplies by those vessels may not be higher than the charges made for transporting like goods for private persons."

Defendants argue that contracts made pursuant to this statute are removed from the effect of the Renegotiation Act, unless the President makes a finding that the rates charged are excessive or unreasonable, which concededly has not been done here. Defendants further argue that this Court has the power to determine that the contracts in question are not subject to the Renegotiation Act.

The Government contends that it is entitled to summary judgment because the issue of whether the contracts are covered by the Renegotiation Act cannot be raised here but must be decided in the Tax Court, and there are no other genuine and material issues to be decided by this Court.

The key question on these facts is whether this Court has the power to decide now if the contracts are covered by the Renegotiation Act. I conclude that the Court does not have such power and that defendants must pursue their already pending suit in the Tax Court for a decision as to that issue. In Macauley v. Waterman S.S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839 (1946), the contention was made that the contracts there involved were not subject to the Act because they were made with a British, rather than an American, governmental agency. The Supreme Court held that the Tax Court, and not the District Court, should decide in the first instance whether the contracts in question were subject to the Act. The Court said that "[the District Court] cannot now decide questions of coverage when the administrative agencies authorized to do so have not yet made their determination." (327 U.S. at 544, 66 S.Ct. at 714).

Defendants contend that the question of whether 10 U.S.C. § 2631 "removes"[4] certain contracts from the scope of the Renegotiation Act is a different question than merely deciding the coverage of that Act.[5] Hermetic Seal Products Co. v. United States,[6] recently decided by the

by any court or agency. The court may determine as the amount of excessive profits an amount either less than, equal to, or greater than that determined by the Board. A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo. * * * The filing of a petition under this section shall operate to stay the execution of the order of the Board under subsection (b) of section 105 [section 1215(b) of this Ap-

pendix] if within ten days after the filing of the petition the petitioner files with the Tax Court a good and sufficient bond, approved by such court, in such amount as may be fixed by the court." The above statutory language, in effect when defendants filed their suit in the Tax Court, was amended in 1962, but the amendments are not dispositive of the issues involved here.

4. Defendants' Memorandum, p. 11.

5. See Defendants' Memorandum, p. 7.

6. 307 F.2d 809 (1 Cir. 1962), *affirming* 128 F.Supp. 749 (D.Puerto Rico 1960),

Court of Appeals for the First Circuit, is directly contrary to this contention. In that case, defendants argued in the District Court that another federal statute (the Puerto Rican Federal Relations Act, 48 U.S.C. § 734) made the Renegotiation Act inapplicable to the contracts there involved. As in the present case, the issue was the effect of another statute on the Renegotiation Act, rather than, as in *Waterman*, a factual issue as to whether the contracts were made with a department of the United States. The Circuit Court in *Hermetic Seal* decided that the question involved was the scope of coverage of the Act, and that determination of that issue must be made, at least initially, in the Tax Court.

In United States v. California Eastern Line, Inc., 348 U.S. 351, 75 S.Ct. 419, 99 L.Ed. 383 (1955), the question before the Court was whether a decision of the Tax Court holding that a contract was not subject to the Act was reviewable in the United States Courts of Appeals. In the course of its decision, the Court stated (348 U.S. at 354–55, 75 S.Ct. at 421):

> "In making determinations as to excess profits the Tax Court must decide at least two separate but interrelated questions: (1)whether a renegotiable contract is involved and (2) the amount if any of excessive profits. We held in the *Waterman* case that the Tax Court has primary, exclusive jurisdiction to decide whether a contract is renegotiable. That result was reached because the Act gives the Tax Court exclusive jurisdiction to determine the amount of profits and the existence of a renegotiable contract is essential to such a determination."

In Lichter v. United States, 334 U.S. 742, 792, 68 S.Ct. 1294, 1320, 92 L.Ed. 1694 (1948), the Court emphasized the primary jurisdiction of the Tax Court under the Renegotiation Act:

> "[T]he statutory provision thus made for a petition to the Tax Court was not, in any case before us, an optional or alternative procedure. It provided the one and only procedure to secure a redetermination of the excessive profits which had been determined to exist by the orders of the respective Secretaries or of the Board in the cases before us. *Failure of the respective petitioners to exhaust that procedure has left them with no right to present here issues such as those as to coverage* and the amount of profits which might have been presented there." (Emphasis added.)

█ Under these authorities, resolution of the question raised here is clear. Defendants' contention that the contracts in question are not covered by the Renegotiation Act should be raised in the Tax Court. If that Court finds that defendants' position is correct, defendants may recover from the Government any amount collected by it in excess of the amount found due by the Tax Court, with interest at four per cent.[7]

Defendants have cited various Supreme Court cases to show that "the general rule of administrative law requiring exhaustion of administrative remedies is not an invariable rule." [8] Defendants quote from Professor Davis' Treatise on Administrative Law to pinpoint what they urge should be the key factors in determining whether to apply the doctrine.[9] They conclude that on an

---

*stay of judgment vacated,* 309 F.2d 482 (1 Cir. 1962), *cert. denied,* 371 U.S. 954, 83 S.Ct. 510, 9 L.Ed.2d 501 (1963).

7. 50 U.S.C.App. § 1218(b); Hermetic Seal Prods. Co. v. United States, 309 F. 2d 482 (1 Cir. 1962), *cert. denied,* 371 U.S. 954, 83 S.Ct. 510, 9 L.Ed.2d 501 (1963); *cf.* United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946).

8. Defendants' Memorandum, p. 8; see, *e. g.,* Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954); Public Util. Comm. of Ohio v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943).

9. 3 Davis, Administrative Law, § 20.03, at 69–71 (1958).

analysis of these factors, exhaustion should not be required, and they should not be relegated to the Tax Court. It is certainly true that in some cases the Supreme Court has passed upon questions of administrative jurisdiction without requiring exhaustion of administrative remedies. But despite this, the cases discussed above do seem dispositive of the precise issue raised here, i. e., where "coverage" of the Renegotiation Act should be litigated in the first instance. Moreover, the Government's position would prevail even under defendants' suggested standard. Professor Davis states [10] that in determining whether to apply the doctrine of exhaustion of administrative remedies:

> "The key factors are three; extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction.

> \* \* \* \* \* \*

> "When the administrative proceeding involves neither abnormal expense nor other irreparable harm, and when the issue of jurisdiction is either doubtful or dependent upon specialized understanding in the agency's field, requiring exhaustion is normally desirable."

In this case, defendants commenced a suit in the Tax Court and had only to file a bond to stay the Renegotiation Board order. However, they chose not to do so. Furthermore, they can still process that suit and recover any sums due them with interest. Finally, according to defendants, the basic question is "one of first impression," [11] so that the issue is at least doubtful, according to their analysis. Considering all of these factors, my conclusion that defendants belong in the Tax Court would remain the same.

The papers do not disclose any other genuine issues as to material facts. Accordingly, plaintiff's motion for summary judgment is granted; defendants' motions for summary judgment are denied. Settle order on notice.

---

10. 3 Davis, *op. cit. supra* note 9, § 20.03, at 69–70.

11. Defendants' Memorandum, p. 7.