**CONSOLIDATED–HAMMER DRY PLATE AND FILM COMPANY, Petitioner,**

v.

**The RENEGOTIATION BOARD, Respondent.**

No. 15806.

United States Court of Appeals Seventh Circuit.

April 11, 1967.

Maurice P. Raizes, Chicago, Ill., for petitioner.

David L. Rose, and Robert C. McDiarmid, Attys., Dept. of Justice, Barefoot

Sanders, Asst. Atty. Gen., Washington, D. C., for respondent.

Before KNOCH, KILEY and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

The Renegotiation Board, respondent herein, decided that the petitioner, Consolidated-Hammer Dry Plate and Film Company, had realized $75,000 excessive profits on renegotiable contracts during the taxable year 1951. The Tax Court on appeal came to the same conclusion.

In this Court, the petitioner seeks review contending that the Tax Court erred in failing (1) to find the petitioner exempt from the Renegotiation Act of 1951, Title 50 U.S.C.A. App. § 1211 et seq.; (2) to exclude certain accruals; (3) to require proper burden of proof; and (4) to make proper findings and conclusions of law.

The Act provided that of the amounts received or accrued during a fiscal year by a contractor (and all persons under control of or controlling or under common control with the contractor) under contracts which were subject to renegotiation, if the aggregate was not more than $250,000, then the receipts or accruals from such contracts should not for that fiscal year be renegotiated under the Act, Title 50 U.S.C.A. App. § 1215(f) (1). (Contracts subject to renegotiation are contracts with the Departments of Defense, Army, Navy, and Air Force to the extent of amounts received or accrued by a contractor on or after January 1, 1951. Title 50 U.S.C.A. App. § 1212.)

If the aggregate of such amounts received or accrued was more than $250,-000, then no determination of excessive profits for such year with respect to such contracts would be for more than the amount of the aggregate in excess of $250,000. Title 50, U.S.C.A. App. § 1215 (f) (1).

If preliminary renegotiations between the Board and the contractor failed to result in an agreement, the Board would enter an order determining the amount of excessive profits. Absent a petition for review to the Tax Court, the Board's order would be conclusive subject to no review or redetermination. Title 50 U.S. C.A. App. § 1215(a).

An aggrieved contractor could petition the Tax Court for redetermination, posting bond to stay execution of the Board's order. Title 50 U.S.C.A. App. § 1218.

The petitioner here did not post such bond. A suit to recover $75,000 plus interest, Civ. No. 59 C 370, is pending presently in the U. S. District Court for the Northern District of Illinois.

When a petition for redetermination is filed with the Tax Court, that Court may redetermine the amount of excessive profits, if any, in a *de novo* proceeding, and "such determination shall not be reviewed or redetermined by any court or agency." Title 50 U.S.C.A. App. § 1218.

Profits for purposes of the Act are defined as the excess of the amount received or accrued under the contracts with which the Act is concerned over the costs paid or incurred with respect to those contracts and determined to be allocable to them. The Act provides that costs shall be determined in accordance with the method of accounting regularly employed by the contractor in keeping his records unless the Board, or the Tax Court, finds that his method does not properly reflect his costs, Title 50 U.S. C.A. App. § 1213(f).

If the Board or the Tax Court finds the contractor's method improper, the Board or Tax Court will determine the method to be used. Title 50 U.S.C.A. App. § 1213(i).

The facts out of which this cause arose are largely undisputed. The Consolidated Photo Engravers and Lithographers Equipment Company (hereinafter called "Photo") was wholly owned by Benjamin Sugarman and his family. It made profits in fiscal years 1948, 1949 and 1950. Mr. Sugarman also owned 90% of Consolidated-Hammer Dry Plate and Film Company, the petitioner herein, which suffered losses during those same three years. On August 31, 1951, Photo was merged into petitioner, after

which the Sugarman family continued to own 98.5% of the stock and Mr. Sugarman, who had been president and treasurer of both companies, continued to serve in those capacities for petitioner.

The substantial loss carry-forward of the petitioner was utilized in the petitioner's tax returns for 1951, and no taxable income was reported. The petitioner had no renegotiable contracts prior to the merger, but through the merger acquired profit-generating business with the Defense Department arising out of contracts subject to renegotiation.

The 1951 tax return showed net sales of about $609,000 and income of about $215,000. The Renegotiation Board, as indicated, found $75,000 excessive profits from renegotiable contracts.

In its petition for redetermination filed December 10, 1958, the petitioner asserted receipt or accrual of $343,200, under contracts subject to renegotiation, but indicated costs so great as to reduce profits to $28,214.97. That petition also stated that the petitioner's prior submission of the figure of $98,214.97 as renegotiable profit was in error and arose from a mistaken inventory and capitalization of certain prototypes produced for the government at a cost of about $100,000 in expectation of government reimbursement which was not forthcoming, and which should have been added to cost of goods sold.

Later, on December 21, 1964, the petitioner filed an amended petition asserting receipt or accrual of only $162,526.87 during 1951 from renegotiable contracts from which no profit at all was earned.

The petitioner explains its failure to amend its income tax returns for 1951, in the light of these alleged errors, on the ground that the various errors in the petitioner's books and records were not discovered until 1958 and later, too late to amend the income tax returns to secure any unused loss carryover for subsequent years.

The petitioner did attempt to show that no large profits had been made, but its records were incomplete in many respects. Some of the cost data referred to costs of Photo prior to the merger which were not attributable to the petitioner. It does not appear that the petitioner ever requested the Board to conduct renegotiation on a consolidated basis to reflect the excessive profits, if any, of the two related contractors as the Board is authorized to do in its discretion. Title 50 U.S.C.A. App. § 1215(a).

In the Tax Court and here, the petitioner contended that a figure of $140,000 for tooling was improperly accrued in 1951, as shown by its records and its tax return, because although this sum was billed to the Air Force in 1951, it had been rejected at that time and was not paid until 1952. The petitioner's accountant testified that this tooling may have been improperly retained in the inventory account, despite the fact that this was a sale, and would thus have resulted in an overstatement of profits. Mr. Sugarman testified that he thought that this tooling had been so retained in the inventory. The Tax Court rejected his conjecture that this error had been made. Apart from the inherent unlikelihood of such an error, the Tax Court noted that to reduce by $140,000 the closing inventory shown by the petitioner's records would produce the odd result that there would have been a lesser rate of increase in inventory following the merger when operations on government contracts were expanded than during the period preceding the merger, which would be extremely peculiar.

The case was complicated by the fact that the petitioner's books for 1951 did not segregate costs involved in sales on renegotiable government contracts from those on non-renegotiable contracts, so that complete cost data was not available as to each contract. The petitioner sought to cover this gap in evidence by production of various documents plus the testimony of Mr. Sugarman and his accountant.

The Tax Court found it unnecessary to determine the issue of the includability of the $140,000 in computing the petitioner's profits subject to renegotiation.

594

The Tax Court held that the renegotiable sales of Photo in 1951 (in an amount in excess of $174,000) when combined with petitioner's own sales exceeded the requisite $250,000 even if the $140,000 were excluded.

The Tax Court found that the petitioner and Photo during 1951 were under common control within the meaning of the Act, § 1215(f) (1), so that the receipts and accruals of Photo could be combined with those of the petitioner to determine that the petitioner was subject to renegotiation by virtue of having met the jurisdictional amount set out in the statute.

■ We agree that the undisputed facts support the Tax Court's finding of common control. The jurisdictional requirements were met. Lowell Wool By-Prod. Co. v. War Contracts P. Adj. Bd., 1951, 89 U.S.App.D.C. 281, 192 F.2d 405.

■ As indicated, the statute makes proceedings to determine the amount, if any, of excessive profits, a hearing *de novo*, not a review of the Board's determination. Under Rule 32 of the Tax Court's Rules of Practice, the burden of proof is on the petitioner, who was here called upon to establish by a preponderance of the evidence that its renegotiable profits in 1951 were reasonable. Boeing Airplane Co. v. Renegotiation Board, 1962, 37 T.C. 613, 635.

The Tax Court's calculations left the petitioner with a profit of $70,568.04 on renegotiable sales of $238,726.44, which was substantially higher than that on non-renegotiable sales and several times that made by Photo, as disclosed by the evidence. The petitioner itself had never previously shown a profit according to the record.

■ The Renegotiation Act allows appellate review of the Tax Court's determination on constitutional and jurisdictional issues only. United States Electrical Motors v. Jones, 1946, 80 U.S.App. D.C. 329, 153 F.2d 134, 136–137; United States v. California Eastern Line, 1955, 348 U.S. 351, 354–355, 75 S.Ct. 419, 99 L.Ed. 383.

The petitioner contends that the holdings of the Tax Court were so arbitrary and capricious as to raise a constitutional issue. A similar argument was raised without success in Boeing Co. v. Renegotiation Board, 9 Cir., 1963, 325 F.2d 885, cert. den. 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed. 215.

■■ The individual rulings to which the petitioner refers all present questions of fact and law entering into determination of the amount, if any, of excessive profits, which are not subject to review by this Court. Further, although not obliged to do so, we have studied the evidence in the record before us and we cannot agree that the various rulings and findings of the Tax Court, some of which turned purely on credibility and the weight to be assigned to testimony heard by the Tax Court, were either arbitrary or capricious.

The decision of the Tax Court is affirmed and the petition is dismissed.

Affirmed.